UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:21-CR-143-ELR-CCB |
| | ) | |
| | ) | |
| **VICTOR HILL,** | ) | |
| | ) | |
| Defendant. | ) | |

## SHERIFF VICTOR HILL'S MOTION TO DISMISS THE INDICTMENT AND REQUEST FOR ORAL ARGUMENT

The Government has selected Clayton County Sheriff Victor Hill to test a novel theory of prosecution: whether placing detainees in a restraint chair—with no other violent act and no significant injury—constitutes excessive force amounting to punishment without due process of law. No person in this judicial circuit has ever been criminally prosecuted *or even held civilly liable* for so little. And while reasonable minds can debate whether the Clayton County Sheriff's Office's ("CCSO") use of the restraint chair—which is a tool utilized in countless detention facilities across the State and the country—warrants closer scrutiny, the Government chose instead to subject Sheriff Hill to *criminal* charges in this case of first impression.

The Constitution forbids prosecution of those who lacked fair warning that their conduct was criminal. While the Indictment charges that the use of the restraint chair constituted "unreasonable force . . . amounting to punishment," under Eleventh Circuit precedent a punitive intent is not enough; Sheriff Hill's use of the restraint chair must constitute excessive force under clearly established law—which it does not. Because Sheriff Hill could not possibly have had fair warning that his use of the restraint chair in the alleged manner was criminal, this prosecution is forbidden *as a matter of law*.

The Indictment must therefore be dismissed because it works a profound irony: By trying to vindicate the due process rights of the alleged victims, it undermines Sheriff Hill's due process right to fair warning that his conduct was even wrong, much less criminal.

## BACKGROUND

At the motion to dismiss stage, this Court must construe the factual allegations in a light most favorable to the Government and determine whether, if true, they are sufficient to state a crime for which Sheriff Hill had notice. *See United States v. deVegter*, 198 F.3d 1324, 1327 (11th Cir. 1999).

Sheriff Hill was indicted on April 19, 2021 on four counts of willfully depriving four detainees at the Clayton County Jail of "the right to be free from the use of unreasonable force by law enforcement officers amounting to

2

punishment," in violation of 18 U.S.C. § 242.[1] (Doc. 1 ¶¶ 45, 47, 49, 51.) The Indictment claims that Sheriff Hill strapped four detainees to a restraint chair "for a period exceeding that justified by any legitimate nonpunitive government purpose," but does not specify how long the detainees were in the chair or how long would have been "justified." (*Id.*) It further alleges that the use of the chair "caused physical pain and resulted in bodily injury" to the detainees (Doc. 1 ¶¶ 45, 47, 49, 51), but it does not allege any facts to support that conclusory statement. Other than the act of placing the detainees in the restraint chair and leaving them for a period of "several hours," the Indictment does not allege any other use of force.

---

[1] The Indictment implies that this case arises out of the Fourteenth Amendment right to be free from punishment without due process (Doc. 1 ¶6), but the law is unclear whether the Fourteenth Amendment actually governs these allegations. Courts apply a Fourth Amendment analysis to excessive force claims involving arrestees; an Eighth Amendment analysis to prisoners; and a Fourteenth Amendment analysis to pretrial detainees. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). As here, the plaintiff in *Crocker* had already been arrested but had not yet appeared for a probable cause determination. *Id.* at 1247. Because he was technically neither an arrestee nor a pretrial detainee, it was unclear which amendment governed his excessive-force claim. *Id.* The Court declined to resolve the question because under any framework the plaintiff's claim failed.

Because the alleged victims in the Indictment fall into a similar category of limbo, it is unclear which constitutional right Sheriff Hill is alleged to have violated. For purposes of this motion, though, it does not matter because there is no law establishing that Sheriff Hill's conduct was unconstitutional, regardless of when in the confinement process it occurred.

Construing these facts as true, Sheriff Hill's use of the restraint chair did not constitute excessive force in violation of clearly established law. Under binding Eleventh Circuit precedent, even if he had a punitive intent he cannot be held liable for willfully violating constitutional rights—much less be criminally prosecuted.

## ARGUMENT

This Court stands as a gatekeeper when there is "an infirmity of law in the prosecution." *See United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). The infirmity here is that Sheriff Hill is charged with crimes for which he lacked notice. *See* Fed. R. Crim. Proc. 12(b)(3)(B)(v); U.S. Const., art. V. A *civil* case on these facts would not survive qualified immunity, so it stands to reason that under the much more exacting standards for criminal prosecution, this Court must intervene and dismiss the Indictment.

To convict, the Government must prove that Sheriff Hill acted (1) willfully and (2) under color of law (3) to deprive the alleged victims of rights protected by the Constitution. *See United States v. Lanier*, 520 U.S. 259, 264 (1997). Section 242 is a specific intent crime, meaning that before a defendant can be found guilty, he must have known that what he did "is precisely that which the law forbids. He is under no necessity of guessing whether the statute applies to him . . . for he either knows or acts in reckless disregard of its prohibition of the deprivation of a defined

constitutional or other federal right." *See Screws v. United States*, 325 U.S. 91, 104 (1945). Unless a defendant charged under Section 242 had "fair warning" that his conduct was unlawful, he cannot be convicted. *See Lanier*, 520 U.S. at 265.

"Fair warning" is the criminal counterpart to the "clearly established" standard for overcoming qualified immunity in civil actions brought under 42 U.S.C. § 1983, and it is similarly a question of law for the court to decide. *See id.* at 270-71 (comparing the level of specificity to the "clearly established" standard for qualified immunity under 42 U.S.C. § 1983). Such warning can only exist if the wrongfulness of the conduct has been proscribed by (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, state, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *See Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation and quotation marks omitted). To satisfy the first prong, only published decisions of the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court can "clearly establish" the law. *Id.* Regarding the second and third prongs, the Supreme Court has warned against defining "clearly established law at a high level of generality," and so the Eleventh Circuit has instructed trial courts to rely primarily on the first path and to use the second and third paths rarely and only when it is *completely obvious* that they apply to the specific situation. *See id.* (citation and quotation marks omitted).

This "fair warning" standard shields defendants from "enforcement of a statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanier*, 520 U.S. at 266 (internal quotation marks and citation omitted). Where any ambiguity exists, the rule of lenity instructs courts to apply the criminal statute "only to conduct clearly covered." *Id.*

This Court should dismiss the Indictment because Sheriff Hill did not have fair warning that his use of a restraint chair, which is a common law enforcement tool, violated the Constitution, and allowing this prosecution to proceed would work a constitutional crisis all on its own.

## I. The Indictment Must Be Dismissed Because Sheriff Hill Did Not Have Fair Warning that the Use of a Restraint Chair Under These Circumstances Was a Crime.

The Indictment relies on the well-established principle that the Constitution prohibits punishment of pretrial detainees. *See, e.g., Crocker*, 995 F.3d at 1249. The Indictment is replete with factual allegations and statements that suggest Sheriff Hill had a punitive intent. Construing those allegations as true, as this Court must, is punitive intent enough?

Not where, as here, the alleged punishment hinges on the excessive use of force. *See id.* at 1249. Three months ago, the Eleventh Circuit distinguished excessive force cases such as this one from what courts have come to call

6

"conditions-of-confinement" cases, where detainees challenge certain rules and policies governing their confinement. *See id.* (discussing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Because detainees have not yet been convicted, a challenged condition of confinement must be reasonably related to some legitimate purpose in running and maintaining order in a detention facility, and "proof of an express intent to punish may be enough to establish that law enforcement violated a clearly established right." *See id.* (noting that *Bell* did not even mention "excessive force").

But where the alleged punishment hinges on the excessive use of force, as this Indictment does, "an express intent to punish alone, coupled with an objectively reasonable use of force," will not sustain an excessive-force-amounting-to-punishment claim. *See id.* The Government must do more than allege a punitive intent, and therefore allegations of Sheriff Hill's statements, motive, and intent are *irrelevant* unless the force used was objectively unreasonable and he knew it was forbidden by law. *See id. (*"[I]t would be passing strange if . . . the excessiveness of an officer's use of force ultimately had nothing to do with the excessiveness of that force but, instead, hinged entirely on proof of an 'express intent to punish.'").

The only question this Court needs to resolve, then, is whether there is clearly established law giving Sheriff Hill fair warning that the use of a restraint

chair in the alleged manner violated the Constitution. The answer is a resounding "no."

### A. It Is Not "Clearly Established" that the Use of a Restraint Chair Even Constitutes the Use of Force.

Physical restraint of varying degrees is often necessary to maintain order and security in a jail, and restraint chairs are one of many lawful tools used by officers. It is unclear in this Circuit whether the use of restraint chairs even falls in that category of law enforcement conduct we call "the use of force"—much less *excessive* force. In *Shuford v. Conway*, inmates sued Gwinnett County law enforcement officers for a host of conduct when the inmates were calm and not actively resisting. 666 F. App'x 811 (11th Cir. 2016). Before placing the inmates in restraint chairs, officers rushed into the inmates' cells and used a variety of bodily force techniques, such as firing Pepperball guns, slamming the inmates to the floor, applying pressure point control techniques, Tasering inmates, and knocking one inmate's head into the concrete. *Id.* at 813-14. Most of the inmates were screaming in pain or crying during the encounters. *Id.* Reversing the district court's grant of qualified immunity to the officers, the Court concluded that this use of force was unreasonable because entering the cells without warning and using techniques that resulted in audible responses of pain from the inmates was unreasonable when the inmates "appeared to be sitting or standing in their cells such that they could be restrained without the use of any force." *Id.* at 816. It was

not the *restraint itself* that concerned the court; it was the officers' use of force prior to the restraint. *See id.*

Other cases in this Circuit involving a restraint chair similarly focus on the other violence—rather than the chair itself—as the excessive force. *E.g.*, *Coffman v. Battle*, 786 F. App'x 926 (11th Cir. 2019) (officer placed inmate in a restraint chair and then tased the inmate twice, which caused four burn marks that later left scars); *Coffman v. Battle*, No. 4:18-CV-22-HLM, 2019 WL 10303633, at *7 (N.D. Ga. Jan. 22, 2019) (noting that the officer "only resorted to force [tasing] *after securing Plaintiff's restraint chair*") (emphasis added); *Jacoby v. Mack*, 755 F. App'x 888 (11th Cir. 2018) (compliant inmate was pepper-sprayed for several seconds and placed in a restraint chair for eight hours without being allowed to change his contaminated clothes or shower off, claiming "the burning sensation caused him to cry out for water and to scream in agony"); *McNeeley v. Wilson*, 649 F. App'x 717, 720 (11th Cir. 2016) (inmate was placed in restraint chair after being pepper-sprayed and without being allowed to decontaminate, which caused difficulty breathing, burning skin, and red and tearing eyes; the lack of opportunity to shower off the pepper spray caused his skin to crack and peel for months after the incident); *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 945, 955 (11th Cir. 2016) (after inmate was placed in a restraint chair, officers broke his finger, kicked him, and burned him with a lighter; officers' use of force happened "after placing

9

him in the restraint chair and rendering him defenseless"); *Murphy v. Cobb County Adult Detention Center*, No. 1:06-CV-3149-TCB, 2007 WL 1020798 (N.D. Ga. Mar. 30, 2007) (inmate sued after he was lifted off his feet and thrown to the floor, handcuffed, and punched repeatedly in the face before being placed in a restraint chair for 10 hours); *Perdue v. Union City*, No. 1:05-CV-753-MHS, 2006 WL 2523094 (N.D. Ga. Aug. 28, 2006) (a suicidal female detainee placed in a restraint chair nude for hours challenged the violation of her "right to bodily privacy," but did not claim the use of the chair constituted force).

Notably, none of these cases were criminal prosecutions.

But even in the civil context, there is not a single case that meets this Circuit's standard for "clearly establishing" that a restraint chair is even "force," and even the unpublished cases involving restraint chairs focus on some other violence that caused the plaintiffs' injury rather than the chair itself. This underscores that Sheriff Hill could not possibly have been on notice that the use of a restraint chair as alleged here was criminally unconstitutional.

### B. **Even if the Use of a Restraint Chair Constitutes the Use of Force, the Amount of Force Used Was Not Objectively Unreasonable Under Clearly Established Law.**

Were this a civil case, a plaintiff could overcome qualified immunity by showing that Sheriff Hill's use of force was "objectively unreasonable" from the perspective of a reasonable officer in his position. *Kingsley v. Hendrickson*, 576 U.S.

10

389, 397 (2015). His "state of mind" regarding whether he thought his use of force was reasonable would not matter if the conduct were objectively unreasonable. *See id.* 395. But this is not a civil case, and the Government *does* have to prove that not only was Sheriff Hill's conduct objectively unreasonable but that he intended to do something forbidden by clearly established law. *See Screws*, 325 U.S. at 104; *Lanier*, 520 U.S. at 266. And should this Court have any doubt whether Sheriff Hill's conduct violated clearly established law, it must apply the rule of lenity in his favor. *See Lanier*, 520 U.S. at 266.

Assuming without conceding that the use of a restraint chair even amounts to the use of force, there are *zero* cases that meets this Circuit's standard for "clearly establishing" that its use under the alleged circumstances was objectively unreasonable.[2] Even more problematic for the Government, the Indictment alleges that the detainees were placed in the restraint chair "for a period exceeding that justified by any legitimate nonpunitive government purpose." (Doc. 1 ¶¶ 45, 47,

---

[2] Indeed, based on undersigned counsel's research into prosecutions involving restraint chairs, it does not appear that the Department of Justice has ever prosecuted *anyone* for using a restraint chair where there is no other aggravating use of force. *See, e.g. United States v. Bryant*, No. 3:18-CR-144, 2021 WL 1118740 (M.D. Tenn. Mar. 24, 2021) (tasing while inmate was in restraint chair); *United States v. Asher*, 910 F.3d 854 (6th Cir. 2018) (beating inmate before and after placing him in restraint chair); *United States v. Mays*, No. 1:14-CR-120-3, 2015 WL 4624196 (S.D. Ohio, Aug. 3, 2015) (same); *United States v. Bailey*, 405 F.3d 102 (1st Cir. 2005) (same); *United States v. Crochiere*, 129 F.3d 233 (1st Cir. 1997) (pouring boiling water on inmate's groin while he was in a restraint chair).

11

49, 51.) This language necessarily implies that it was not the decision to place the detainees in the restraint chair that offends the Constitution but rather the length of time they were restrained, as there is some period of restraint that *would be* justified.[3] Yet there is no law undersigned counsel has found that clarifies how long a "legitimate" period would be sufficient to put Sheriff Hill on fair warning.

In the absence of a case clearly establishing that Sheriff Hill's conduct was criminal, perhaps the Government intends to argue that "a broad statement of principle within the Constitution, state, or case law" condemns his behavior, or that it was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *See Crocker*, 995 F.3d at 1240. But the Eleventh Circuit has warned courts that these alternate paths are "rarely trod," and should be relied on when they apply "'with *obvious clarity* to the circumstances.'" *See id.* (quoting *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007)) (emphasis in original).

The Indictment suggests that the Government will rely on various trainings and policies regarding the use of a restraint chair to show "fair warning,"

---

[3] The evidence will show that the four detainees were kept in the restraint chair no longer than the period allowed under the CCSO policy, which the Government selectively cited in the Indictment, and that a nurse checked on the detainees every 15 minutes to ensure their safety, which is also required by the policy. Sheriff Hill understands that these points of fact cannot be considered by the Court at this time, as it must accept the Indictment's factual allegations as true. But it further underscores the vagueness problem with whatever phantom time period the Government claims would have been acceptable.

12

including the CCSO policy, that guide when a restraint chair may be used. But whether Sheriff Hill's actions were consistent with internal policy guidance is beside the point; in order to be unlawful, they must be inconsistent with the Constitution. *Cf. United States v. House*, 684 F.3d 1173, 1206 (11th Cir. 2012) (finding error when the district court instructed the jury that it could convict a law enforcement officer based on a traffic stop initiated against agency policy even if the officer had reasonable suspicion or probable cause). The Government must prove beyond a reasonable doubt that he intended to do something the *law* forbids, not something an internal policy forbids. *See Screws*, 325 U.S. at 104; *Lanier*, 520 U.S. at 265.

Looking to the four corners of the Indictment alone, this Court can determine that the alleged conduct falls far short of being objectively unreasonable even by broad constitutional principles. But consider first the Eleventh Circuit's most recent word on the matter. In *Crocker*, the plaintiff was standing in a median taking pictures of a fatal car crash with his phone. *Crocker*, 995 F.3d at 1238. The officers on the scene tried to seize his phone as evidence, and the plaintiff argued and mouthed off but was otherwise cooperative. *Id.* The officers arrested him for resisting, handcuffed him, and placed him in the back of a hot patrol car where he

13

"sweated profusely, experienced some trouble breathing, and felt anxious."[4] *Id.* In the absence of caselaw clearly establishing that the officer's conduct violated the constitution, the court relied on the factors for objective unreasonableness outlined by the Supreme Court in *Kingsley v. Hendrickson*. *Id.* at 1250 (citing *Kingsley*, 576 U.S. 389 (2015)).

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* The Court clarified that this list is illustrative of the factors that may be considered but is not exhaustive in determining whether the use of force was excessive and amounted to punishment. *Id.* Considering those factors, and applying them to a relatively cooperative plaintiff who was then handcuffed and confined in uncomfortable circumstances, the Court held that "there was very little 'force' used and essentially no harm done. In the Fourteenth Amendment context . . . '[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Id.* at 1251 (quoting *Bell*, 441 U.S. at 539 n.21) (alteration in original). "That *de minimis* principle reflects the reality that '[n]ot

---

[4] While admittedly not ripe for consideration at the motion to dismiss stage, the evidence in this case will show that any discomfort suffered by the alleged victims in this case was significantly less than that suffered by the plaintiff in *Crocker*, which that court found to be *de minimis*. *Crocker*, 995 F.3d at 1303.

14

everything that stinks violates the Constitution.'" *Id.* (citing *Hillcrest Property, LLP v. Pasco Cnty.*, 915 F.3d 1292, 1303 (11th Cir. 2019) (Newsom, J., concurring)) (alteration in original). Affirming summary judgment on qualified immunity, the Eleventh Circuit held it was not unconstitutional punishment.

If by the lower *civil* standard the Eleventh Circuit would not allow those facts to reach a jury, it confounds reason that this criminal case should reach a jury where we have comparable circumstances: allegedly cooperative detainees, minimal force, and *de minimus* harm at best. No factual development at trial can cure the fundamental infirmity of this prosecution—it charges acts that no law criminally proscribes. Because Sheriff Hill did not have fair warning that the alleged restraint of detainees violated their constitutional rights, this criminal case should end here.

### C. **As a Matter of Policy, This Court Should Be Judicious in Allowing Prosecutions for Jail Administration Decisions in the Absence of Clearly Established Law.**

Society yearns to armchair-quarterback the choices a sheriff makes in managing his jail, substituting its collective judgment in righteous indignation when it feels a line has been crossed. But in the courthouse—and particularly where a sheriff faces criminal sanctions—the Court must resist that urge. The problems that administrators face in dealing with the daily operations of jails do not always come with easy solutions, and courts must recognize that "maintaining

institutional security and preserving internal order and discipline are essential goals" that justify constitutional restraints. *See Bell*, 441 U.S. at 546. Jail administrators are therefore owed "wide-ranging deference in the adoption and execution of policies and practices that in [administrators'] judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547.

And so it is with great restraint that courts should review the actions of detention officers. While this Court may "disagree with the choice of means to effectuate" the institution's legitimate need to maintain order and security, it "should not second-guess the expert administrators on matters on which they are better informed." *Bell,* 441 U.S. at 544. Nor should this Court "substitute [its] judgment on these difficult and sensitive matters of institutional administration and security for that of 'the persons who are actually charged with and trained in the running' of such facilities." *Block v. Rutherford*, 468 U.S. 568, 588 (1984) (quoting *Bell*, 441 U.S. at 562). Running a jail "is an inordinately difficult undertaking," and ensuring safety and order "requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Kingsley*, 576 U.S. at 399. And thus when deciding whether a sheriff's conduct was objectively unreasonable, the court "must also account for the

16

legitimate interests that stem from" the administrator's need to manage his jail. *Id.* at 397 (internal quotation marks and citation omitted).

Sheriff Hill's job is not just full-time, it is literally nonstop. He is charged under the Georgia Constitution with enforcing the laws and preserving the peace on behalf the State, and he has extraordinary discretion to execute those duties. *See Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1334 (11th Cir. 2003) (*en banc*). And particularly when it comes to the difficult and dangerous job of maintaining order and security in a jail, this Court should demand to know *what law put him on notice* that his use of a common physical restraint tool was criminally unconstitutional.

That law simply does not exist. The only thing "clearly established" in this case is that allowing a man to be prosecuted without fair warning that his conduct was unlawful undermines the very constitutional rights the Government seeks to vindicate.

## CONCLUSION

Due process forbids courts from allowing exactly what the Government has done here—"applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266. Where the Government seeks the ultimate sanction—the forfeiture of Sheriff Hill's liberty—the Government needs to show up to court with considerably more egregious conduct than the use of a restraint

17

chair. After an exhaustive investigation, the Government failed to find any serious criminal conduct and so heaves this Hail Mary pass. Given the Government's unprecedented overreach here, Sheriff Hill requests that this Court grant oral argument if helpful and dismiss the Indictment.

This 12th day of July, 2021.

Respectfully submitted,

By: /s/     **Lynsey M. Barron**
             Lynsey M. Barron


Drew Findling
    Ga. Bar No. 260426
Marissa Goldberg
    Ga. Bar No. 672798
The Findling Firm
3490 Piedmont Road NE, Suite 600
Atlanta, GA 30305
Telephone (404) 460-4500
Email: drew@findlinglawfirm.com
            marissa@findlinglawfirm.com


Lynsey M. Barron
    Ga. Bar No. 661005
Miller & Martin PLLC
1170 Peachtree Street, N.E. Suite 800
Atlanta, Georgia 30309-7706
Telephone (404) 962-6100
Email: lynsey.barron@millermartin.com

*Attorneys for Sheriff Victor Hill*

**CERTIFICATE OF SERVICE**

I hereby certify that on the below date I electronically filed the foregoing Motion to Dismiss the Indictment with the Clerk of Court using CM/ECF system which will automatically send email notification of such filing to the to the following attorneys of record:

>Brent Gray, AUSA
>Brett Hobson, AUSA
>U.S. Attorney's Office
>600 Courthouse
>75 Ted Turner Drive SW
>Atlanta, GA 30303

This 12th day of July, 2021

>*/s/ Lynsey M. Barron*
> By: Lynsey M. Barron
>   Ga. Bar No. 661005
>
> *Attorney for Sheriff Victor Hill*