'UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:21-CR-143-ELR-CCB |
| | ) | |
| | ) | |
| VICTOR HILL, | ) | |
| | ) | |
| Defendant. | ) | |

**SHERIFF VICTOR HILL'S REPLY TO THE
GOVERNMENT'S CONSOLIDATED RESPONSE TO
SHERIFF HILL'S VARIOUS PRETRIAL MOTIONS**

Sheriff Victor Hill, by and through his undersigned attorneys, files this Reply to the Government's Consolidated Response to Sheriff Hill's Various Pretrial Motions (Doc. 35). Sheriff Hill renews his request for oral argument on his Motion to Dismiss (Doc. 20).

**A. This Court should dismiss the indictment because the Government has not and cannot establish that Sheriff Hill had fair warning that his use of a restraint chair in the alleged circumstances ran afoul of the Constitution.**

The Government concedes that there is no case materially similar to the facts alleged here, even in the civil context, that could have put Sheriff Hill on notice that the use of a restraint chair in the alleged manner violated the Fourteenth Amendment. Instead, the Government argues that he could nonetheless be on fair warning in the absence of material similarity where the constitutional rule in

established by prior cases applies with "'obvious clarity to the specific conduct in question.'"¹ (Doc. 35 at 12 (citing *United States v. Lanier*, 520 U.S. 259, 271 (1997)).) To prove "obvious clarity," the Government principally relies on the infamous hitching post from *Hope v. Pelzer*, 536 U.S. 730 (2002), and the tasing in *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947 (11th Cir. 2019), to show that restraint is excessive when the original justification for the restraint, to the extent there was one, no longer exists.

Sheriff Hill acknowledged the well-established principle that the Constitution prohibits punishment of pretrial detainees in his Motion to Dismiss. *See, e.g., Crocker v. Beatty*, 995 F.3d 1232, 1240, 1249 (11th Cir. 2021). Regardless of whether Sheriff Hill had a punitive intent, his use of the restraint chair in the alleged circumstances must be objectively unreasonable on the face of the Indictment in order to survive a motion to dismiss. *See id.* Presumably, the Government relies on the allegations that the inmates were not under the influence of alcohol, were unarmed, and were offering no resistance in order to show that

---

¹ The Government claims Sheriff Hill "ignores the Supreme Court's explicit direction that such a direct holding [regarding material similarity] is not required." (Doc. 35 at 19.) On the contrary, Sheriff Hill's Motion to Dismiss acknowledged that a defendant can be on fair warning in the absence of a materially similar case if the constitutional rule applies "'with *obvious clarity* to the circumstances.'" (Doc. 20 at 12 (citing *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (emphasis in original).) But Sheriff Hill also noted that this alternate path is "rarely trod." (*Id.*)

the use of the chair was not "'rationally related to a legitimate nonpunitive government purpose'" or were otherwise "'excessive in relation to that purpose.'" (Doc. 35 at 14 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2005)).)

Subduing a noncompliant pretrial detainee is certainly an objectively reasonable purpose for using force, *see Piazza*, 923 F.3d at 952, which is presumably why the Indictment offers contrast by repeatedly alleging that the detainees in question were not resisting. But even in the absence of resistance, force can be justified to "otherwise achieve a permissible governmental objective." *Id.* Such permissible objectives can include the "need to 'preserve internal order and discipline,'" often making "'split-second judgements' about the need for such force 'in circumstances that are tense, uncertain, and rapidly evolving.'" *Id.* at 953 (quoting *Kingsley*, 135 S. Ct. at 2473-74)). For that reason, courts will not second-guess the officer's decision to apply force "in a glib, post-hoc fashion or 'with the 20/20 vision of hindsight.'" *Id.* (quoting *Kingsley*, 135 S. Ct. at 2473). Rather, courts should strive to "consider the situation through the lens of a 'reasonable officer on the scene.'" *Id.* There mere fact of nonresistance therefore does not, on its own, necessarily render force objectively unreasonable.

Regarding the type of force that can be used, the Government is correct that there would be little merit in trying to distinguish a standard excessive force case on the grounds that prior caselaw involves Weapon X, and this case involves

3

Weapon Y. (*See* Doc. 35 at 16 (quoting *Piazza*, 923 F.3d at 956). There is no "meaningful distinction" between pepper spray, beatings, tasers, etc. *See Piazza*, 923 F.3d at 956. But this is not a standard excessive force case because we are not dealing a difference of weapons or physical force; here, we are dealing with passive restraint in a chair. As stated in Sheriff Hill's Motion to Dismiss, there is *no* case establishing that a restraint chair even constitutes the use of force; indeed, officers in a jail use a variety of means to restrain inmates that fall below the threshold of what we typically consider the "use of force" in a law enforcement context—and that is a "meaningful distinction" between this case and others involving force. *See id.*

The facts alleged by the Government are therefore most close to those in *Crocker v. Beatty*, which should be the instructive case for resolving Sheriff Hill's motion (and which case, understandably, the Government chose largely to ignore). While summarized more fully in Sheriff Hill's Motion to Dismiss, it is worth emphasizing the similarities between *Crocker* and this case. In both cases, the alleged victims were cooperative. *See Crocker*, 995 F.3d at 1238. In both cases, the alleged victims mouthed off and were subsequently restrained in uncomfortable circumstances. *See id.* (the plaintiff was handcuffed and put in a hot patrol car where he "sweated profusely, experienced some trouble breathing, and felt anxious"). The Eleventh Circuit could have compared those facts to the

4

uncomfortable hitching on a hot summer day in *Hope,* as the Government asks this Court to do, but instead found there was no caselaw clearly establishing that the officer's conduct violated the Constitution and asked whether the conduct was objectively unreasonable based on the factors articulated in *Kingsley*, including the proportionality of the force balanced against its need, the extent of the injury inflicted, the severity of the security threat posed by the victim (if any), and whether the victim was actively resisting. *Id.* at 1250. Where there is very little force used and very little harm done, such "*de minimis* level of imposition" does not offend the Constitution. *Id.* at 1251.

Query why the Government chose to pursue this particular law enforcement officer, whose conduct pales by comparison in the universe of police misconduct, but this Court can remedy such overreach. In *Crocker*, against the lower civil standard, the Eleventh Circuit affirmed the district court's decision to keep such a marginal case from ever reaching a jury. Under the significantly more exacting standard of a criminal prosecution with up to ten years in prison on the line, this Court should follow suit because no fact that could possibly come out at trial on these allegations can cure the fundamental infirmity of this prosecution—it charges acts that are not clearly criminal.

### B. If this Court allows the prosecution to proceed, it should strike language from the Indictment that reflects the bad acts of others for which Sheriff Hill is not responsible.

Sheriff Hill is charged as a principle for ordering that detainees be placed in a restraint chair, not with aiding and abetting others or conspiracy to engage in excessive force by way of beating after the detainees were restrained. The Government alleges that W.T. was strapped in the restraint chair on Sheriff Hill's orders, and that he was later struck in Sheriff Hill's presence.[2] (Doc. 24 ¶¶ 45-47.) The Government does not allege, nor could it, that Sheriff Hill was the one who struck W.T. or that he ordered the strike.

Assuming as true that W.T. was struck while restrained, there is no allegation from which this Court could conclude that Sheriff Hill could reasonably foresee the beating by another officer. *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000) (officers are responsible "for the natural and foreseeable consequences" of their own actions); *see also Carruth v. Bentley*, 942 F.3d 1047, 1056 (11th Cir. 2019) ("The requisite causal relation for a § 1983 claim does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."). Nor are there alleged facts from which this Court could conclude that Sheriff Hill is vicariously liable

---

[2] Although inappropriate for consideration at this stage, the statements by W.T. are wildly inconsistent regarding whether Sheriff Hill was present or even whether there was a hood over W.T.'s head.

6

for the unconstitutional acts of whomever struck W.T. *See Chatham v. Adcock*, 334 F. App'x 281, 285-86 (11th Cir. 2009) (supervisors are only liable if they personally participate in the wrongful conduct, or if there is a causal connection between their conduct and the constitutional injury). There are no allegations that Sheriff Hill personally participated in or ordered the beating, only that it occurred in his presence.

In the absence of participation, the Eleventh Circuit has identified three ways in which there can nonetheless be a "causal connection" between a supervisor's actions and the injury: (1) If the supervisor was on notice through a history of abuse and the need to correct the wrongful behavior but failed to do so; (2) if the supervisor's custom or policy resulted in deliberate indifference; or (3) if the supervisor either directed that the wrongful action occur or failed to stop it. *Id.* There is nothing in the Indictment or discovery supports such conclusion, and thus the alleged beating of W.T. serves only to prejudice Sheriff Hill and inflame the jury. Sheriff Hill stands by his motion to strike.

### C. **This Court should require the Government to particularize the Indictment to articulate the harm it intends to prove at trial so Sheriff Hill can determine whether he needs to hire an expert.**

Sheriff Hill will not recite the arguments made in his Amended Motion for a Bill of Particulars (Doc. 32), but the Government has not obviated his concern about whether he needs to hire a medical expert in order to prepare for trial. The

7

Government responds only that it provided FBI memoranda of interviews "that memorialize statements by each of the victims who have clearly stated that Hill's actions caused them physical pain and, in some instances, greater injury." (Doc. 35 at 24.) There is a difference in causing physical pain and physically injuring someone, and Sheriff Hill needs to know for which victims the Government intends to prove physical injury and what that physical injury is.

The FBI 302's offer little clarification. For example, the 302 for victim J.A. (Count One) says only that the restraint chair "physically injured" him and caused him "physical pain." But there is no further elucidation of what that injury was such that Sheriff Hill can refute it at trial, perhaps with expert medical testimony. The 302 for victim J.H. (Count Three) explains that the victim believed he suffered a sprained wrist from the chair. Sprains require a medical diagnosis, but there is no other evidence that J.H. suffered a sprain. This Court should require the Government to articulate whether its felony theory hinges on this alleged sprain or some other injury, or whether it will argue only physical pain. The 302 for victim G.H. (Count Four) discusses shoulder pain he allegedly suffered, and the victim claims that he still has pain that radiates into his arm and hand. Does the Government intend to prove only that he was in pain or that he suffered some injury that caused lasting damage? If the Government intends to rely solely on

8

proof of physical pain, then this Court should require it to commit to that theory now or otherwise further explain what the "physical injury" is.

For the reasons stated in Sheriff Hill's original pleadings and based on the above replies to the Government's response to those motions, this Court should grant Sheriff Hill's requested relief.

This 11th day of October, 2021.          Respectfully submitted,

By: /s/   **Lynsey M. Barron**
          Lynsey M. Barron


Drew Findling
   Ga. Bar No. 260426
Marissa Goldberg
   Ga. Bar No. 672798
The Findling Firm
3490 Piedmont Road NE, Suite 600
Atlanta, GA 30305
Telephone (404) 460-4500
Email: drew@findlinglawfirm.com
       marissa@findlinglawfirm.com


Lynsey M. Barron
   Ga. Bar No. 661005
Miller & Martin PLLC
1170 Peachtree Street, N.E. Suite 800
Atlanta, Georgia 30309-7706
Telephone (404) 962-6100
Email: lynsey.barron@millermartin.com

*Attorneys for Sheriff Victor Hill*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on the below date I electronically filed the foregoing Motion to Dismiss the Indictment with the Clerk of Court using CM/ECF system which will automatically send email notification of such filing to the to the following attorneys of record:

>Brent Gray, AUSA
>Brett Hobson, AUSA
>U.S. Attorney's Office
>600 Courthouse
>75 Ted Turner Drive SW
>Atlanta, GA 30303

This 11th day of October, 2021

>*/s/  Lynsey M. Barron*
> By:  Lynsey M. Barron
>      Ga. Bar No. 661005
>
> *Attorney for Sheriff Victor Hill*