UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:21-CR-143-ELR-CCB |
| | ) | |
| | ) | |
| **VICTOR HILL,** | ) | |
| | ) | |
| Defendant. | ) | |

## SHERIFF VICTOR HILL'S OBJECTIONS TO THE REPORT AND RECOMMENDATION DENYING HIS MOTION TO DISMISS THE INDICTMENT

Clayton County Sheriff Victor Hill is, to the best of undersigned counsel's knowledge, the first law enforcement officer in the country to be charged *criminally* for restraining inmates. The Magistrate Judge recommends that this Court deny Sheriff Hill's Motion to Dismiss the Indictment by applying a simple syllogism: restraint is force, force cannot be applied against a detainee who has stopped resisting, therefore an unresisting detainee cannot be restrained. (*See* Doc. 45 at 18 ("Here the general rule—that an officer may not continue to use force against a detainee who has clearly stopped resisting—squares with the allegations in the superseding indictment.").)

This *cannot* be the law. Applying the "general rule"—which was developed in the context of traditional forms of violent force like tasers, fists, and pepper

spray—to a case like this, as the Magistrate Judge recommends, potentially makes criminal every instance where a pretrial detainee is placed in restraints when they are otherwise not resisting, such as the every-day restraint of unresisting detainees in handcuffs and leg chains when they are moved through a jail.

Presumably this is not the intent of the Report and Recommendation ("R&R") (Doc. 45), but it highlights the problem with the broad and overgeneralized rule on which the R&R relies when applied to restraint. There has to be more nuance to the no-force-against-unresisting-detainees rule in the context of restraint in order for law enforcement officers to do their job of maintaining order and safety. Restraints are often necessary and are certainly legal in a variety of law enforcement contexts, but where should those lines be drawn? What conditions must be present to justify restraint in the first place? What types of restraints are legal? Under what circumstances are they legal and for how long can the restraint occur?

These are questions that deserve to be answered, but the answers do not exist *yet*. The law does not *yet* provide sufficient guidance to law enforcement officers for when their use of restraint crosses the line from permissible to criminal. And because the law has yet to address that line in the context of restraint, due process forbids that it be developed in the context of a prosecution.

Sheriff Hill renews his request for oral argument before this Court.

## OBJECTIONS

Like the Magistrate Judge, this Court must take the allegations as true when deciding a motion to dismiss. *See United States v. deVegter,* 198 F.3d 1324, 1327 (11th Cir. 1999). However, this Court reviews *de novo* whether the allegations state a crime when a party objects to the R&R's conclusions of law. *See United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004).

I. **The Law Does Not Provide Fair Warning That Restraint Without Any Other Use of Force Violates the Fourteenth Amendment.**

The R&R correctly pinpoints the central question here: whether "pre-existing law gave reasonable warning that [Sheriff Hill's] conduct violated constitutional rights." (Doc. 45 at 10.) The recommendation that Sheriff Hill's motion be denied hinges on the rule, which the R&R surprisingly calls "neither novel nor new," that any restraint of an unresisting detainee is the unconstitutional use of excessive force. (*Id.* at 12, 18, 22.) Because the indictment alleges that Sheriff Hill directed that force be used "against pretrial detainees who were complying with law enforcement instructions," the R&R recommends that Sheriff Hill's motion be denied. (*Id.* at 13.)

The R&R relies on *Williams v. Burton*—a civil case in which an inmate was put in a four-point restraint with his mouth taped for 28 hours and in which qualified immunity was *upheld*—to conclude that restraint causing pain and injury constitutes the use of force. (Doc. 45 at 14-16 (discussing *Williams v. Burton*, 943

3

F.2d 1572 (11th Cir. 1991).) In *Williams*, the initial decision to place the inmate in restraints was justified because he posed a threat to himself and others; the real question was whether the restraints were used longer than necessary "to meet the particular exigent circumstance which precipitated their use." *See Williams*, 943 F.2d at 1575-76. But *Williams'* holding, that restraint was justified because the inmate posed a threat, does not clearly establish the converse—that restraint is never justified *unless* the inmate poses a threat or is noncompliant. Importantly, the court noted that in analyzing the use of force in a carceral context, courts must "show great latitude to the discretion of prison officials in inmate management." *Id.* at 1577 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

No doubt, the precedent cited by the R&R provides fair warning that the use of traditional force (tasers, batons, physical violence, pepper spray, etc.) may not be used once a detainee is compliant. But this case presents a significant variation of that rule—whether it is clearly established that law enforcement officers cannot even *restrain* detainees who are not actively resisting. In other words, is restraint alone, without any other use of physical force, sufficiently like traditional uses of force that Sheriff Hill had fair warning that his conduct was criminal? *See United States v. Lanier*, 530 U.S. 259, 266 (1997) (discussing the "fair warning" standard for criminal prosecution under 18 U.S.C. § 242).

The R&R attempts to resolve this question by relying on *Piazza v. Jefferson City*, a case involving the use of tasers, to point out that there need not be a prior case directly on point involving the same type of force in order to clearly establish that force was excessive. (Doc. 45 at 16 (discussing *Piazza v. Jefferson City*, 923 F.3d 947 (11th Cir. 2019).) There was no existing precedent directly classifying the use of tasers in that context as excessive, but the court nonetheless noted that it has "never suggested that the longstanding prohibition on a jail officer's use of force on an incapacitated detainee turns on as fine a point as the particular weapon deployed." *Piazza*, 923 F.3d at 956. There was "no meaningful distinction between pepper spray to an unresisting detainee's face, a kick to his gut, or a taser to his chest and neck. The crucial question is whether the law gave [the defendant] fair warning that his conduct—tasing an already-tased, incapacitated, incontinent, and unresisting detainee—violated the Fourteenth Amendment." *Id.* (internal quotation marks and citations omitted). The court found that it did.

But the type and manner of force alleged in this case—placing detainees in a seated position and restraining their limbs from movement—is categorically different from the types of force at issue in *Piazza* and every other case where excessive force has been found. And there's the rub. While it may be obvious that the application of a weapon to a body (taser, fist, pepper spray, baton) is prohibited force when the detainee is no longer resisting, it is less clear that the rule applies

5

to the passive restraint of limbs, even if uncomfortable and at times painful. Without explanation or analysis, the R&R states in a footnote that "[t]here is no meaningful distinction between what Defendant terms 'passive' force (restraining someone for hours) and more 'active' force (punching someone in the face, for example." (Doc. 45 at 17 n.3.) But this is where the R&R's syllogism breaks down in a way the R&R does not resolve and surely does not intend because that rule cannot possibly stand in a carceral context.

Consider how often physical restraint is necessary to maintain order and prevent disaster even when the detainees are not resisting. Any detainee who is taken outside a cell or common area is going to be placed in handcuffs and leg chains regardless of whether they are resisting or otherwise pose a threat. Unresisting detainees may be chained to hospital beds when in infirmaries. Unresisting detainees can be forced to sit for hours while waiting to be booked. Detainees are often restrained during transport or while in holding cells awaiting court. Indeed, the very day before filing these Objections, undersigned counsel attended a presentence investigation report interview with a different client, which occurred in a U.S. Marshal lockup visitation room in the federal courthouse. Her client was the only person on his side of the partition and was compliant the entire time he was in the room, but he was left in handcuffs and leg chains for the entire 90-minute interview. Under the rule advocated by the government and

adopted by the R&R, the U.S. Marshals violated the client's right to be free from the excessive use of force since he was neither resisting nor posing a threat to anyone. Surely this result was not intended by the R&R, but it underscores the problem of applying the "clearly established law at too high a level of generality." *City of Tahlequah, Okla. v. Bond*, 595 U.S. \_\_\_\_ (2021) (*per curiam*) (slip op. at 3) (Doc. 41-2).

The rule simply cannot be that unresisting detainees can never be restrained, lest this Court invite a flood of litigation and prosecutions for conduct that is routine and necessary in every jail across the country. But if there is a line that cannot be crossed in the restraint context, neither the government nor the R&R have pointed to the law that gave Sheriff Hill fair warning of that delineation. This is the gravamen of his motion to dismiss—that none of the cases relied on by the government and the Magistrate Judge apply "with obvious clarity" to the situation that faced Sheriff Hill. *See Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (where there is no case directly on point, courts should exercise restraint in finding the illegality of the alleged conduct "clearly established," and should do so only when a constitutional principle applies "with *obvious clarity* to the circumstances" (emphasis in original, citation and quotations omitted))).

Maybe the law does need to develop in this area so that, beyond the obvious uses of force such as beatings, tasers, and pepper-spray, law enforcement officers

7

know when they can and cannot restrain a detainee who is not actively resisting. That is fertile ground for civil litigation under 42 U.S.C. § 1983, where courts can decide when passive restraint constitutes the unconstitutional exercise of force and out of which criminal prosecutions can be brought. But the contours of that law does not exist *yet*, and this Court must stand in the way of the government's attempt to develop that law in the context of a criminal prosecution.

## II.     The Closest Case to These Facts Suggests That Passive Restraint is Not Excessive Force.

Beyond the dearth of caselaw making it clearly obvious that Sheriff Hill's conduct rose to the level of excessive force, the Eleventh Circuit's most recent word on the issue suggests that such passive restraint of an unresisting detainee may not be a constitutional violation. In *Crocker v. Beatty*, the plaintiff took pictures of a fatal car crash with his phone but refused to give the policy his phone, who wanted it as evidence. *Crocker*, 995 F.3d at 1238. The officers arrested him despite the fact that he was otherwise cooperative, and they handcuffed him and placed him in the back of a hot patrol car where he "sweated profusely, experienced some trouble breathing, and felt anxious." *Id.* The Eleventh Circuit, in an opinion written by the same judge who penned *Piazza*, held that restraint of the unresisting arrestee did not rise to excessive force. *Id.* at 1250.

The R&R dismisses *Crocker* because "in that case, there was some need for the use of force—the officer had to restrain the arrestee by placing him in the squad

8

car in order to transport him to jail." (Doc. 45 at 19.) But the need for the restraint was just one of several factors the *Crocker* court considered, and nowhere does the court suggest it was the decisive factor. *See Crocker*, 995 F.3d at 1250. Indeed, the court went out of its way to describe the *de minimis* nature of the force used and the amount of harm actually caused—factors that clearly weighed more heavily in the court's conclusion that the force was not excessive. *Id.* at 1251 ("[T]here was very little 'force' used and essentially no harm done. In the Fourteenth Amendment context . . . [t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.") (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)) (alteration in original). "That *de minimis* principle reflects the reality that '[n]ot everything that stinks violates the Constitution.'" *Id.* (citing *Hillcrest Property, LLP v. Pasco Cnty.*, 915 F.3d 1292, 1303 (11th Cir. 2019) (Newsom, J., concurring)) (alteration in original). It is the type of force used and the degree of injury sustained that drove the court's conclusion that the passive restraint was not excessive force.

At a minimum, *Crocker* points out the inherent contradiction in the R&R's proposed rule—that restraint can never be used on an unresisting detainee. (*See* Doc. 45 at 18 ("Here the general rule—that an officer may not continue to use force against a detainee who has clearly stopped resisting—squares with the allegations in the superseding indictment.").) If there are to be exceptions to that rule—for

9

example, if unresisting detainees can be restrained when there is some as-yet-undefined "need" for the restraint—those exceptions need to fleshed out with greater clarity than currently exist before the government threatens prison for violating those exceptions.

    The Supreme Court recently issued two *per curiam* decisions warning lower courts to proceed with measured caution before allowing civil rights litigation to reach juries where it is not completely clear that the subject conduct was illegal. *See Rivas-Villegas v. Cortesluna*, 595 U.S. \_\_\_\_ (2021) (*per curiam*) (slip op.) (Doc. 41-1), and *City of Tahlequah, Okla. v. Bond*, 595 U.S. \_\_\_\_ (2021) (*per curiam*) (slip op.) (Doc. 41-2). Existing precedent "clearly establishing" a principle need not align at all four corners with presently alleged facts, but the government must point to more than "broad general proposition[s]" and call it a day. *Rivas-Villegas*, 595 U.S. \_\_\_\_ (slip op. at 4). The application of a broad constitutional rule to the charged conduct must be "beyond debate," *id.*, and lower courts should not "define clearly established law at too high a level of generality." *City of Tallequah*, 595 U.S. \_\_\_\_ (slip op. at 3). If a rule is to be deemed "clearly established, it must not be merely "suggested" by prior precedent; its "contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

If under the lower civil standard courts should not allow cases to reach juries where the conduct is not clearly illegal, so too here this Court should stand in the way of a criminal prosecution that violates due process.

## **CONCLUSION**

The "fair warning" standard required by due process forbids courts from allowing exactly what the Government has done here—"applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266. If there is any ambiguity at all about whether the defendant's conduct is clearly proscribed, the rule of lenity requires dismissal. *See id.* To conclude otherwise would, ironically, threaten the very due process rights the government seeks to vindicate. Sheriff Hill respectfully asks that this Court exercise its plenary review and dismiss the Indictment.

This 12th day of January, 2022.	Respectfully submitted by,

/s/*Lynsey M. Barron*
    Lynsey M. Barron

Drew Findling
    Ga. Bar No. 260426
Marissa Goldberg
    Ga. Bar No. 672798
The Findling Firm
3490 Piedmont Road NE, Suite 600
Atlanta, GA 30305
Telephone (404) 460-4500
Email: drew@findlinglawfirm.com
      marissa@findlinglawfirm.com

Lynsey M. Barron
    Ga. Bar No. 661005
Miller & Martin PLLC
1170 Peachtree Street, N.E. Suite 800
Atlanta, Georgia 30309-7706
Telephone (404) 962-6100
Email:  lynsey.barron@millermartin.com

***Attorneys for Sheriff Victor Hill***

**CERTIFICATE OF SERVICE**

I hereby certify that on the below date I electronically filed the foregoing Motion to Dismiss the Indictment with the Clerk of Court using CM/ECF system which will automatically send email notification of such filing to the to the following attorneys of record:

>Brent Gray, AUSA
>Brett Hobson, AUSA
>U.S. Attorney's Office
>600 Courthouse
>75 Ted Turner Drive SW
>Atlanta, GA 30303

This 12th day of January, 2022.

>*/s/ Lynsey M. Barron*
> By: Lynsey M. Barron
>   Ga. Bar No. 661005
>
> *Attorney for Sheriff Victor Hill*