IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>VICTOR HILL | Criminal Action No.<br><br>1:21-CR-00143-ELR-CCB |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE IMPROPER ARGUMENTS AND EVIDENCE**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Brent Alan Gray and Bret R. Hobson, Assistant United States Attorneys for the Northern District of Georgia, files this motion in limine to exclude improper arguments and evidence.

Based on Defendant Victor Hill's pretrial statements—to the media, in court, and on social media—and the government's past experiences in cases alleging excessive force by law enforcement officers, the government anticipates that Hill may seek to introduce arguments and evidence improperly aimed at jury nullification, including: (i) insinuations that the government pursued this prosecution for an improper purpose, that this is a novel theory of prosecution, that Hill's misconduct is minor compared to other law enforcement misconduct, or that the government could have addressed Hill's misconduct through a civil suit or other remedies short of criminal prosecution; (ii) implications that Hill's previous good acts, accolades, commendations, or accomplishments excuse Hill's

misconduct; (iii) suggestions that Hill's suspension from office has negatively impacted the community or that his conviction in this case would do so; (iv) suggestions that the victims' past or subsequent misconduct or bad acts justify Hill's unrelated infliction of harm to the victims; (v) suggestions that unrelated incidents of violence in the jail justify Hill's abusive law enforcement practices; and/or (vi) arguments that Hill's suspension from office should satisfy the need for justice in this case or other discussions of the potential penalties Hill faces if convicted.

Defendants in civil rights trials often attempt to offer arguments and evidence of this sort, the effect of which is to improperly encourage jury nullification, and Hill has already made such arguments in media interviews, court filings, and social media postings. Consequently, the government seeks this pretrial ruling because any reference to these matters during voir dire or at trial could result in prejudice, even if the government objected immediately and the Court sustained the objection.

As described below, the anticipated arguments and evidence are irrelevant and immaterial to the charges Hill faces. Moreover, even if the arguments and evidence had some minimal probative value, their admission should be barred by Federal Rule of Evidence 403 because the risk of undue prejudice is great. Thus, pursuant to longstanding precedent and practice, the Court should preclude admission of these arguments and evidence as they would serve no purpose other than to improperly encourage jurors to set aside the Court's instructions and decide the case on an impermissible basis.

## Background

On April 19, 2021, a federal grand jury in the Northern District of Georgia returned a criminal indictment, charging Hill—the Sheriff of Clayton County, Georgia—with four counts of willfully depriving detainees at the Clayton County Jail of their constitutional right to be free from unreasonable force by law enforcement officers, in violation of 18 U.S.C. § 242. (Doc. 1.) Specifically, the grand jury alleged that Hill caused the four victims to be strapped into restraint chairs at the jail without any legitimate nonpunitive governmental purpose and for a period exceeding that justified by any legitimate nonpunitive governmental purpose. (*Id.*) The grand jury further alleged that these offenses caused physical pain and resulted in bodily injury to the victims. (*Id.*)

Following Hill's indictment, the Governor of Georgia suspended him from office. Hill filed suit in state court seeking reinstatement, but the court denied his request. Hill appealed the decision to the Georgia Court of Appeals, which has not yet ruled. As of this filing, Hill remains suspended from office.

On July 29, 2021, after uncovering another victim that Hill caused to be strapped into a restraint chair without any legitimate purpose, the federal grand jury returned a superseding indictment against Hill that included a fifth § 242 count. (Doc. 24.) Then, on March 16, 2022, the grand jury returned a second superseding indictment with two additional § 242 charges related to two more victims that Hill caused to be strapped into restraint chairs without any legitimate purpose. (Doc. 49.) As to all seven victims, the grand jury alleged that although they were not combative and posed no threat to anyone, Hill caused

3

them to be strapped into restraint chairs for hours, resulting in pain and injury. (*Id.*)

Hill moved to dismiss the second superseding indictment, arguing that he did not have fair warning that his conduct was criminal. (Doc. 57.) In his motion and related filings and argument, Hill described the indictment as a "novel theory of prosecution," (doc. 20 at 1); asked this Court to "[q]uery why the Government chose to pursue this particular law enforcement officer, whose conduct pales by comparison in the universe of police misconduct," (doc. 39 at 5); and suggested that the government should have pursued remedies short of criminal prosecution in this case, (*see, e.g.*, doc. 20 at 1; doc. 47 at 1). In the media and online, Hill's attorneys and associates have continued to describe this federal prosecution as "novel," "malicious," and "politically motivated."[1] In addition,

---

[1] *See, e.g.*, Exhibit 1 attached hereto: Clayton County Sheriff's Office, GA, Nixle (Feb. 8, 2022, 9:19 AM), https://nixle.us/DEDET?_ga=2.91852890.1111407783.1659550999-577155270.1659550999 ("Selecting Sheriff Hill to test a novel theory of prosecution speaks volumes as of the malicious nature of this case. No other person in this judicial circuit has ever been criminally prosecuted, or even been held civilly liable for this."); *id.* (describing this case as "politically motivated" and a "malicious prosecution"); *see also* Exhibit 2 attached hereto: Clayton County Sheriff's Office, GA, Nixle (Dec. 29, 2021, 12:04 PM), https://nixle.us/DBFXB?_ga=2.54556651.1111407783.1659550999-577155270.1659550999 ("Sheriff Victor Hill is notably the first and only law-enforcement official in the country criminally charged with using his discretion to restrain violent offenders. Others throughout the nation (with the most notable being Gwinnett County) have restrained and assaulted prisoners while only facing civil lawsuits at best."); Exhibit 3 attached hereto: *Court Hears Arguments to Lift Suspension of Clayton County Sheriff*, FOX 5 Atlanta, Nov. 29,

they have repeatedly asserted that crime rates have risen in Clayton County and in the jail as a result of Hill's suspension and that those rates will come back down if he is acquitted and returns to office.[2]

---

2021, http://www.fox5atlanta.com/news/court-hears-arguments-to-lift-suspension-of-clayton-county-sheriff ("[Hill's a]ttorneys argued the case against Hill is unconstitutional, saying the move by federal prosecutors is politically motivated."); *id.* ("'But for the fact that this case involved Victor Hill, there would be no case,' Drew Findling said."); *id.* ("'Never in the history of this country has the Department of Justice ever prosecuted anyone for conduct even remotely similar to what Victor Hill is being prosecuted for,' attorney Lynsey Barron said."); Exhibit 4 attached hereto: Clayton County Sheriff's Office, GA, Nixle (Aug. 5, 2021, 8:06 AM), https://nixle.us/CZ69C (claiming, among other things, that "[a]ll of the alleged 5 victims in this case were solicited by Hill's political enemies").

[2] *See, e.g.*, Exhibit 5 attached hereto: Victor Hill, Facebook (Aug. 8, 20222, 11:19 AM), https://www.facebook.com/sheriff.hill ("Last year, after the suspension of Sheriff Victor Hill, the murder rate reached an all time unprecedented high. . . . In 64 days evidence will clear the Sheriff of all false allegations so he can return to put a handle on the violent crime that the Chairman of the county has not shown any capability to manage.  October 12th can't come fast enough!"); Exhibit 6 attached hereto: Victor Hill, Facebook (Jul. 8, 2022, 4:36 PM), https://www.facebook.com/sheriff.hill (posting graphic photographs that appear to show shanks and a blood-smeared wall at the jail, and stating, "The crime not only skyrocketed on the streets in [Hill's] absence, but in the jail as well with inmate on inmate assaults going up 208%"); Exhibit 7 attached hereto: Clayton County Sheriff's Office, GA, Nixle (May 13, 2022, 8:58 AM), https://nixle.us/DLSWP ("We are grateful for the continued prayers and support for Sheriff Hill and are excited that within a few months, he will return to restore law and order to Clayton County once more."); Exhibit 1 *supra* note 1 ("Sadly, the above officials did not have a[n] alternate plan to keep the county safe from the crime that is now out of control since the absence of Sheriff Hill."); Exhibit 2 *supra* note 1 (claiming that violent crime is up in Clayton County following Hill's suspension and that "assaults are also up in the county jail with

This Court denied Hill's motion to dismiss the indictment, ruling that Hill had fair notice that his alleged conduct was criminal. (Doc. 58 at 1-8.) Specifically, the Court found that "the counts within the operative indictment fit within the Eleventh Circuit's well-defined case law precluding the use of force against a detainee who has stopped resisting, absent any legitimate nonpunitive governmental purpose to continue such restraint." (*Id.* at 7-8.) And the Court rejected Hill's argument that fair notice could be provided only through prior excessive force cases that specifically involved restraint chairs. (Doc. 45[3] at 16-18.) Simply put, no matter the particular type of force deployed, if Hill "ordered the use of force, without any legitimate purpose, against individuals who were not resisting and did not pose a threat," he committed a well-established constitutional violation. (*Id.* at 17-18.)

---

inmates now embolden[ed] by the absence of the Sheriff"); *id.* ("As a result of this malicious and politically motivated prosecution of Sheriff Hill by the Clayton County DA's Office and the DOJ, it is has been observed that law-enforcement in Clayton County has been less pro-active about pursuing criminals fearing that they could be prosecuted for doing their jobs as well."); Exhibit 4 *supra* note 1 ("Violent crime is now up in every sector of Clayton County since Sheriff Hill's suspension. . . . This suspension stops the one man who has proven he can control and reduce crime. By having Sheriff Hill sit on the sidelines while violent crime takes off in Clayton County diminishes the quality of life for citizens who depends on his leadership.").

[3] Doc. 45 is the Magistrate Judge's Final Report and Recommendation ("R&R"), which this Court expressly adopted in its order denying Hill's motion to dismiss the indictment. (Doc. 58 at 2.)

## Argument and Citation of Authority

1. **Hill's anticipated arguments and evidence have no bearing on whether he violated 18 U.S.C. § 242, and thus they are inadmissible because they are irrelevant and immaterial.**

Although the accused generally has wide latitude in presenting defenses, the right to present a defense is not absolute. In presenting his defense, Hill must abide by the rules of evidence and procedure, including standards of relevance and materiality. *See, e.g., United States v. Taylor*, 484 U.S. 400, 410 (1988); *United States v. Hurn*, 368 F.3d 1359, 1365-66 (11th Cir. 2004). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Whether a fact is "of consequence" is a question governed by substantive law, and is directly linked to the elements of the offenses charged. *See United States v. Perkins*, 204 F. App'x 799, 805 n.4 (11th Cir. 2006) ("In a criminal trial, issues of consequence generally consist of 'the elements of the offenses charged and the relevant defenses (if any) raised to defeat criminal liability.'" (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981))); *see also Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010) ("Relevancy is not assessed in a vacuum—it is gauged in light of the underlying substantive law." (internal quotation marks omitted)). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

Here, Hill is charged with violating 18 U.S.C. § 242, which requires the government to prove Hill "acted (1) willfully and (2) under color of law (3)

7

to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Brown*, 934 F.3d 1278, 1294 (11th Cir. 2019) (internal quotations and citations omitted).  There is no dispute that Hill acted under color of law, and Hill's anticipated arguments and evidence are irrelevant to whether he deprived the victims of a constitutional right or whether he did so willfully.

### A. Hill's anticipated arguments and evidence are irrelevant to whether he deprived the victims of their right to be free from excessive force.

Among the rights protected by the Constitution and § 242 is the right to be free from excessive force by law enforcement officers in various settings, including while in pretrial detention: "if force used against a pretrial detainee is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective, it constitutes 'punishment' and is therefore unconstitutional."  *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 952 (11th Cir. 2019).  To establish that an officer used excessive force, the government must show that the force used against a detainee was "objectively unreasonable" in light of the facts and circumstances the officer knew "at the time."  *Kingsley v. Hendrickson*, 576 U.S. 389, 297 (2015).  "Once a prisoner has *stopped resisting* there is no longer a need for force, so the use of force thereafter is disproportionate to the need."  *Piazza*, 923 F.3d at 953 (quoting *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008), *abrogated on other grounds by Kingsley*, 576 U.S. 389) ("In other words, because force in the pretrial detainee context may be defensive or preventative—but never punitive—the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to

8

comply."); *see also Blackmon v. Sutton*, 734 F.3d 1237, 1242 (10th Cir. 2013) (Gorsuch, J.) (holding that placing a pretrial detainee in a restraint chair without any legitimate penological purpose constitutes unconstitutional punishment).

Accordingly, as dictated by the substantive law governing this action, the jury should not look to unrelated events that preceded or post-dated Hill's uses of force. Rather, the jury should confine its examination to the facts and circumstances known to Hill at the time he used force against the alleged victims, in particular whether the detainees were resisting or instead were compliant. None of Hill's anticipated arguments or evidence bears on any aspect of this objective reasonableness inquiry. Specifically, arguments and evidence about the following simply have no relevance to whether the force Hill used against these detainees was objectively unreasonable in light of the facts and circumstances Hill knew at the time: insinuations that the prosecution is political, novel, or malicious; how Hill's actions compare to other even more egregious uses of excessive force; what alternatives to criminal prosecution exist; Hill's other good acts, including any supposed reduction in crime during his time as sheriff; the victims' unrelated bad acts;[4] unrelated violent incidents at the jail; and/or the proper punishment for Hill's misconduct.

---

[4] Of course, the government does not object to the defense introducing any evidence properly available for impeachment of the victims, if and when they testify. The government also does not object to the defense introducing evidence about the alleged conduct for which the victims were detained when Hill ordered them strapped into restraint chairs for hours.

### B. Hill's anticipated arguments and evidence are irrelevant to whether he acted willfully.

To prove that an officer acted willfully under § 242, the government must prove that he acted "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *See Screws v. United States*, 325 U.S. 91, 105-07 (1945). To act willfully, "[a] defendant need not have been 'thinking in constitutional terms,' so long as his 'aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution.'" *Brown*, 934 F.3d at 1296 (quoting *Screws*, 325 U.S. at 106). The defendant's purpose "need not be expressed; it may be reasonably inferred from all the circumstances." *Screws*, 325 U.S. at 106; *see also Brown*, 934 F.3d at 1297 (explaining that "where an officer's actions so obviously violate his training on the use of force, a jury may infer that the violation was willful").

As was the case with the reasonableness inquiry, none of Hill's anticipated arguments or evidence bears on whether he acted willfully. This Court has already ruled that Hill had fair warning that he violated the victims' constitutional rights if he used force against them as unresisting detainees, absent any legitimate nonpunitive governmental purpose to continue such restraint. (Doc. 58 at 7-8.) And as noted in the R&R that this Court adopted, "there need not be a prior case involving restraint chairs for it to be 'reasonably clear' that [Hill's] use of the restraint chair in this case, against detainees who were not resisting, amounted to criminal conduct." (Doc. 45 at 17 (internal citation omitted).)

Accordingly, it matters not whether the government has prosecuted other restraint chair cases, whether the government could have addressed Hill's misconduct through a civil suit or other remedies, or whether other officers have been prosecuted for even more egregious misconduct. Nor are any of the following arguments or evidence relevant to whether Hill's aim was to deprive the victims of their right to be free from excessive force: supposed motives for the prosecution; other good acts Hill may have committed, including supposedly reducing crime in Clayton County; unrelated bad acts the victims may have committed; unrelated violent incidents at the jail; and/or any discussion of the appropriate punishment for Hill's offenses.

2. **Even if Hill's anticipated arguments and evidence had some minimal probative value (they do not), they would still be unduly prejudicial because they would inflame the passion of the jurors and suggest they should ignore the law and vote instead on an improper emotional basis.**

Courts may exclude relevant evidence when its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403; *see id.* Advisory Committee Notes ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); *see also United States v. Rodriguez*, 797 F. App'x 475, 478 (11th Cir. 2019) ("Within the context of Rule 403, unfair prejudice typically means an undue tendency to suggest decision on an emotional basis.").

In line with this rule and the basic relevancy principles set forth above, federal courts have universally excluded evidence and arguments that encourage jury

11

nullification.⁵ *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("[Defendant's] jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice.  While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur."); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2d Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [nullification] power.  A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification." (internal citation omitted)); *United States v. Demarais*, 938 F.2d 347, 350 (1st Cir. 1991) ("[I]t would have been improper to urge the jury to nullify applicable law."); *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983) ("[F]ederal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed.").

---

⁵ Jury nullification is defined as a "jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness."  *Black's Law Dictionary* (10th ed. 2014).

12

In that regard, the Eleventh Circuit stated that:

> A jury has not more "*right*" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)); *see* Eleventh Circuit Pattern Jury Instructions (Criminal), Basic Instruction B2.1 ("You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.").

The sole purpose of Hill's anticipated arguments and evidence would be to mislead the jury, confuse the issues, and suggest the jury improperly decide this case on an emotional basis. Arguments and evidence that the case against Hill is supposedly political, novel, or malicious, that other supposedly worse officers have escaped criminal liability, or that the government could have pursued remedies short of criminal prosecution here would impermissibly encourage the jury to give Hill a break regardless of whether he is guilty. Similarly, highlighting Hill's past accolades as a public servant, the victims' unrelated transgressions, or other unrelated violent incidents in the jail would improperly suggest that the jury should decide this case based on their good feelings toward Hill, their bad feelings toward the victims, or the impermissible conclusion that force against unresisting detainees is allowed simply because jails can be

13

dangerous places. The admission of these arguments or evidence would substantially risk unfair prejudice and confusion and would risk misleading the jury by unjustifiably distracting it from the actual elements of the charged conduct. In order to avoid such a result, and in order to adhere to the tenets and principles of the Federal Rules of Evidence, the Court should not allow such arguments and evidence aimed at jury nullification.

Finally, any arguments or evidence regarding the punishment for Hill's offenses are improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'" (internal footnote omitted) (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975))); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."). Indeed, the Eleventh Circuit has stated unequivocally that the "question of punishment should never be considered by the jury in any way in deciding the case." *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); *accord* Eleventh Circuit Pattern Jury Instructions (Criminal), Basic Instruction No. 10.2 (2016) ("You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide."). This analysis applies equally to the collateral penalties associated with a felony conviction – such as being prohibited from certain types of employment

14

and losing the rights to possess firearms and vote. *See United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) (unpublished) ("A defendant is not entitled to an instruction informing the jury of the consequence of a guilt or innocence finding in terms of punishment." (citing *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970))); *United States v. Thigpen*, 4 F.3d 1573, 1578 (11th Cir. 1993) (holding that "the general rule against informing jurors of the consequences of a verdict governs such cases").

## Conclusion

For the foregoing reasons, this Court should preclude Hill from offering the anticipated arguments and evidence improperly aimed at jury nullification, including: (i) insinuations that the government pursued this prosecution for an improper purpose, that this is a novel theory of prosecution, that Hill's misconduct is minor compared to other law enforcement misconduct, or that the government could have addressed Hill's misconduct through a civil suit or other remedies short of criminal prosecution; (ii) implications that Hill's previous good acts, accolades, commendations, or accomplishments excuse Hill's misconduct; (iii) suggestions that Hill's suspension from office has negatively impacted the community or that his conviction in this case would do so; (iv) suggestions that the victims' past or subsequent misconduct or bad acts justify Hill's unrelated infliction of harm to the victims; (v) suggestions that unrelated incidents of violence in the jail justify Hill's abusive law enforcement practices; and/or (vi) arguments that Hill's suspension from office should satisfy the need for justice in this case or other discussions of the potential penalties Hill faces if convicted.

                    Respectfully submitted,

                    RYAN K. BUCHANAN
                    *United States Attorney*

/s/ BRENT ALAN GRAY
 *Assistant United States Attorney*
Georgia Bar No. 155089
Brent.Gray@usdoj.gov

/s/ BRET R. HOBSON
 *Assistant United States Attorney*
Georgia Bar No. 882520
Bret.Hobson@usdoj.gov

600 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
(404) 581-6000
fax (404) 581-6181

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

>Drew Findling
>Marissa Helene Goldberg
>The Findling Law Firm, P.C.
>Suite 600, One Securities Centre
>3490 Piedmont Road NE
>Atlanta, GA 30305
>drew@findlinglawfirm.com
>marissa@findlinglawfirm.com
>
>Lynsey Morris Barron
>Barron Law LLC
>3104 Briarcliff Road
>P.O. Box 29964
>Atlanta, GA 30359
>lynsey@barron.law
>
>*Attorneys for Defendant Victor Hill*

August 10, 2022

>/s/ BRET R. HOBSON
>
>BRET R. HOBSON
>
>*Assistant United States Attorney*