IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:21-CR-00143-ELR-CCB |
| VICTOR HILL | |

**GOVERNMENT'S RESPONSE TO DEFENDANT HILL'S MOTION IN LIMINE**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Brent Alan Gray and Bret R. Hobson, Assistant United States Attorneys for the Northern District of Georgia, files this response to Defendant Victor Hill's motion in limine (doc. 66).

In his motion in limine, Hill seeks to exclude seven categories of evidence the government may offer at trial, including evidence of: (1) unrelated uses of force by other Clayton County Sheriff's Office (CCSO) employees at the Clayton County Jail (the "Jail"); (2) the conditions and procedures of confinement at the Jail; (3) other lawsuits against Hill, other indictments of Hill, and Hill's suspension from office; (4) Hill's retaliation against employees that raised concerns; (5) obstruction of the government's investigation; (6) the legality of the arrests of the victims in this case or the strength of the cases against them; and (7) Hill's relationships with potential fact witnesses and Hill's interest in Batman and associated symbols.  (*See generally* Doc. 66.)  But evidence in nearly all of

these categories is directly relevant to the elements of the offenses with which Hill is charged, specifically whether Hill's uses of force were objectively unreasonable and/or whether Hill acted willfully.  In addition, none of the relevant evidence is unfairly prejudicial.  Accordingly, the Court should deny Hill's motion in limine and reserve judgment on whether any of the government's evidence is admissible.

## Background

The grand jury has charged Hill – the Sheriff of Clayton County, Georgia – with willfully depriving seven victims of their constitutional right to be free from unreasonable force by law enforcement officers, in violation of 18 U.S.C. § 242. (Doc. 49.)  Specifically, the grand jury alleged that Hill caused the seven victims, who were detainees at the Jail, to be strapped into restraint chairs without any legitimate nonpunitive governmental purpose and for a period exceeding that justified by any legitimate nonpunitive governmental purpose.  (*Id.*)  The grand jury further alleged that these offenses caused physical pain and resulted in bodily injury to the victims.  (*Id.*)

In order to convict Hill of these charges, a jury must find beyond a reasonable doubt that Hill "acted '(1) willfully and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States.'" *United States v. Brown*, 934 F.3d 1278, 1294 (11th Cir. 2019) (quoting *United States v. House*, 684 F.3d 1173, 1198 (11th Cir. 2012)).  Because there is no dispute that Hill acted under color of law, the evidence will largely focus on whether Hill

deprived the victims of the described constitutional right and whether he did so willfully.

## A. The constitutional deprivation at issue

Hill deprived each victim of the right to be free from unreasonable force by law enforcement officers if the force Hill "purposely or knowingly used against [the victim] was objective unreasonable."  *See Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)); *see also Kingsley*, 576 U.S. at 398 (noting that the unreasonableness of a particular use of force may be established by "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental object or that it is excessive in relation to that purpose"). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" and is determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time."  *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The following non-exclusive list of considerations may be relevant to the jury's determination whether the force used was objectively unreasonable:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* "Once a prisoner has *stopped resisting* there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Piazza*, 923 F.3d at 953 (quoting *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008), *abrogated on other grounds by Kingsley*, 576 U.S. 389) ("In other words, because force in the pretrial detainee context may be defensive or preventative—but never punitive—the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply."); *see also Blackmon v. Sutton*, 734 F.3d 1237, 1242 (10th Cir. 2013) (Gorsuch, J.) (holding that placing a pretrial detainee in a restraint chair without any legitimate penological purpose constitutes unconstitutional punishment).

## B. Willfulness

"A person acts 'willfully' for purposes of section 242 when he acts with 'a specific intent to deprive a person of a federal right made definite by decision or other rule of law,' or 'in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite.'" *House*, 684 F.3d at 1199–200 (quoting *Screws v. United States*, 325 U.S. 91, 103 (1945)). To act willfully, "[a] defendant need not have been 'thinking in constitutional terms,' so long as his 'aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution.'" *Brown*, 934 F.3d at 1296 (quoting *Screws*, 325 U.S. at 106); *see also United States v. Reese*, 2 F.3d 870, 885-86 (9th Cir. 1993) (explaining that in a § 242 excessive force case, "the requisite specific intent is the intent to use more force than is necessary under the

circumstances," and the defendants did not need to know "their use of force was unlawful").  In other words,

> The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law.  While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that [his] conduct may be violating.

Eleventh Circuit Pattern Jury Instructions, Criminal Cases, Basic Instruction B9.1A.  The defendant's purpose "need not be expressed; it may be reasonably inferred from all the circumstances."  *Screws*, 325 U.S. at 106.

## Argument and Citation of Authority

**1.  Much of the challenged evidence is relevant.**

Much of the evidence Hill seeks to exclude bears directly on (1) whether Hill's uses of force were objectively unreasonable and/or (2) whether he acted willfully.  Because these are elements of the offenses with which Hill is charged, such evidence is relevant and admissible.  Generally speaking, relevant evidence is admissible, and irrelevant evidence is not.  *See* Fed. R. Evd. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Whether a fact is "of consequence" is a question governed by substantive law, and is directly linked to the elements of the offenses charged.  *See United States v. Perkins*, 204 F. App'x 799, 805 n.4 (11th Cir. 2006) ("In a criminal trial, issues of consequence generally consist of 'the

5

elements of the offenses charged and the relevant defenses (if any) raised to defeat criminal liability.'" (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981))); *see also Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010) ("Relevancy is not assessed in a vacuum—it is gauged in light of the underlying substantive law." (internal quotation marks omitted)).

### A. The government does not intend to introduce evidence of unrelated uses of force by other employees at the Jail.

Hill seeks to preclude the government from offering evidence of any alleged bad act "committed by other employees of the Clayton County Sheriff's Office not directly related to the incidents described in the indictment."  (Doc. 66 at 3.) The government does not intend to introduce evidence of unrelated uses of force by other employees.

But evidence of other uses of force that are *intrinsic* to the charged offense is admissible.  "[I]ntrinsic evidence is admissible if it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'"  *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quoting *United States v. Edouard*, 432 F.3d 1324, 1344 (11th Cir. 2007)).  That is, "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."  *Edouard*,

485 F.3d at 1344 (alteration in original) (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)).  "And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'"  *Id.* (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

In accordance with these rules, the government may introduce evidence of other uses of force that are intrinsic to the charged offenses.  For instance, the government intends to introduce evidence that after Hill ordered one victim strapped in the restraint chair for no permissible purpose, another guard struck the victim in the face.  (Doc. 49 ¶ 59.)  This evidence is necessary to explain why the victim had blood on his clothes in his mugshot and why guards placed a smock over his clothes before taking the picture of him that accompanies the use-of-force report about Hill ordering him into the restraint chair.  Accordingly, this is admissible intrinsic evidence because it is inextricably intertwined with evidence regarding the charged conduct and necessary to complete the story of the crime.

**B. Evidence of the conditions and procedures of confinement at the jail is relevant to whether Hill acted willfully and whether his uses of force were objectively unreasonable; and evidence of how deputies were uniformed, trained, equipped, and deployed is also relevant both to whether Hill's uses of force were objectively unreasonable and whether he acted willfully.**

Hill seeks to preclude the government from mentioning the use of paper gowns at the Jail, detainees being sent for mental health assessments or placed on suicide watch, and the use of a meal substitute known as "nutraloaf" or "veg-loaf."  (Doc. 66 at 3-4.)  But evidence that Hill ordered such procedures without justification in conjunction with placing victims in restraint chairs suggests he intended to impermissibly punish the victims.  While "proof of intent (or motive) to punish" is not required to prove a jailer used excessive force against a pretrial detainee, *see Kingsley*, 576 U.S. at 398, evidence of such intent would doubtlessly show an intent to do something the law forbids because "force in the pretrial detainee context may be defensive or preventative—but never punitive."  *Piazza*, 923 F.3d at 953; *see also Bell v. Wolfish*, 441 U.S. 520, 536 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

Here, the government intends to introduce evidence that, in conjunction with placing the victims in the restraint chair, Hill ordered several of them to undergo needless mental health assessments and/or be placed on suicide watch, clothed in paper gowns, and served "nutraloaf" (also known as "Special Management Meals"), even though the victims showed no signs of posing a danger to themselves.  This evidence supports an inference that Hill intended to

8

impermissibly punish the victims by putting them in the restraint chair, which would establish that Hill acted willfully.

Hill also seeks to preclude the government from mentioning the way deputies are uniformed and equipped, the techniques and procedures different units use, and the decisions to utilize particular units.  (Doc. 66 at 4.)  But evidence about these subjects is directly relevant to whether Hill's uses of force were objectively unreasonable and whether Hill acted willfully.  The evidence is relevant to the objective reasonableness inquiry because among the considerations that bear on whether a particular use of force is unreasonable are "the severity of the security problem at issue [and] the threat reasonably perceived by the officer."  *Kingsley*, 576 U.S. at 397.  And evidence that Hill placed non-resisting victims in restraint chairs despite being surrounded by a specialized team of deputies that were uniquely uniformed, trained, and equipped demonstrates that there was no security problem at issue and no threat perceived by Hill.  Therefore, such evidence is relevant to an element of the charged offenses and is admissible.

In addition, evidence about Hill's decision to send a heavily armed fugitive squad after one of the victims supports an inference that Hill intended to punish the victim for personal reasons rather than for any legitimate penological purpose.  In that instance, Hill had contacted the victim after learning the victim and one of Hill's deputies were engaged in a payment dispute over some landscaping work unrelated to the deputy's employment.  (Doc. 49 ¶ 44.)  Following Hill's communication with the victim, during which the victim told Hill, "you can go fuck yourself," Hill ordered another deputy to swear out a

warrant against the victim for a misdemeanor charge of harassing communications. (*See id.* ¶¶ 45-58.) Hill then sent a heavily armed fugitive squad into a nearby county on multiple days to search for the victim and arrest him on the misdemeanor warrant. (*See id.* ¶ 51.) After the victim subsequently turned himself in peacefully, Hill met him at the Jail and immediately ordered him into a restraint chair. (*Id.* ¶¶ 52-55.) And despite the victim posing no suicide risk, Hill ordered him to receive three days of Special Management Meals and placed him on suicide watch where he was clothed in a paper gown. Such evidence is relevant to whether Hill acted willfully.

**C. The government does not intend to offer any evidence of other lawsuits against Hill or of prior indictments of Hill for other violations, nor does the government intend to elicit or emphasize evidence of Hill's suspension, although witnesses should be able to testify about when Hill stopped running the Jail.**

Hill seeks to preclude the government from mentioning any other lawsuits against him, previous criminal cases against him, or his suspension from office following his indictment in this case. (Doc. 66 at 5.) The government has no intention of doing so. In fact, with respect to the suspension, the government itself moved in limine to exclude any evidence or argument about how Hill's suspension has allegedly affected the community or whether Hill's suspension should satisfy the need for justice in this case. (*See generally* doc. 65.)

However, the government plans to call a number of current and former CCSO employees, and Hill's suspension from office is a significant point in the timeline of their employment that may be inextricably intertwined with their explanation

of their work at the Jail.  While the government is happy to instruct its witnesses not to discuss the suspension proceedings themselves or suggest any negative findings associated with those proceedings, the government should not be placed at risk of violating this Court's order if a witness inadvertently mentions the suspension or merely notes the fact that Hill stopped being in command of the Jail after his suspension in June 2021.  After all, the suspension does not implicate other bad acts beyond the charged conduct in this case, and the the jury will already know that Hill has been indicted for that conduct.  Accordingly, mere mention of the suspension or the fact that Hill is not currently in charge of the Jail will not risk unfairly prejudicing the jury.

### D. Evidence of retaliation against employees is relevant both to whether Hill's uses of force were objectively unreasonable and to whether he acted willfully.

Hill seeks to preclude testimony that he fostered an environment of retaliation and fired employees who raised concerns, and about how Hill reacted when he learned employees were speaking with the federal government as part of this investigation.  (Doc. 66. at 5-6.)  But such testimony supports multiple relevant inferences.  First, it is relevant to the objective reasonableness inquiry because the government expects multiple CCSO employees to testify that they were concerned about inappropriate uses of force at the Jail, including Hill's use of the restraint chair without justification, and would have objected but for their fear that they would suffer retaliation if they voiced their concerns.  After all, Hill repeatedly told CCSO employees that his word was not to be questioned, and

11

employees that got on the bad side of Hill or his close associates were frequently disciplined for minor infractions (real or imagined), placed on unfavorable shifts, demoted, or even fired.

Second, if Hill fired employees that raised concerns or reacted negatively when he learned employees were speaking with the federal government about his use of the restraint chair, such evidence supports an inference that he willfully violated the law.  A defendant's "subsequent conduct may be considered if it supports a reasonable inference as to his prior intent."  *Brown*, 934 F.3d at 1296 (quoting *House*, 684 F.3d at 1200).  Here, Hill's retaliation against employees that raised concerns and his negative reaction to those that later cooperated with the government's investigation has had a chilling effect on potential witnesses' willingness to testify against him.  Not only do current employees fear negative employment consequences, but even former employees fear that Hill will seek to ruin their careers or otherwise harm them.  Such evidence of Hill's subsequent conduct supports an inference that Hill acted willfully when he placed the victims in restraint chairs without justification.

### E.  Evidence of missing documents is relevant to whether Hill acted willfully.

Hill seeks to preclude the government from offering evidence from which the jury may conclude Hill or the CCSO engaged in an effort to hide evidence or not cooperate with government investigators.  (Doc. 66 at 6.)  But evidence that documents related to uses of force either were not created or were not provided in response to subpoenas supports an inference that Hill acted willfully.  A jury

12

may infer willfulness from evidence that an officer tried to cover up his actions
after the fact.  *See Brown*, 934 F.3d at 1297; *House*, 684 F.3d at 1202.  So too may a
jury infer willfulness from an officer's failure to properly fill out and file use-of-
force reports in accordance with a department's policy and training.  *See Brown*,
934 F.3d at 1297.  Here, evidence will show that at the time of the charged
incidents, the CCSO had a policy that everyone involved in a use of force was to
fill out a report, but when the government issued subpoenas for such reports and
related documentation from the CCSO, many items were not provided.  Whether
Hill and other officers failed to properly fill out and file such reports in
accordance with CCSO policy and training or refused to produce them to
investigators, the absence of such documents supports an inference that Hill
acted willfully.

**F. Evidence about the legality of the arrests of the victims in this case and
the strength of the cases against them is relevant to whether Hill acted
willfully and whether his uses of force were objectively unreasonable.**

Hill seeks to preclude evidence that raises doubts about the legality of the
arrests that brought the victims into Hill's custody at the Jail or the strength of
the cases against them.  (*See* doc. 66 at. 7.)  But as noted above, evidence about
the misdemeanor charges filed against one victim that allegedly harassed Hill
bears directly on whether Hill acted willfully when he restrained that victim. (*See
supra* at 9-10.)

In addition, the circumstances of the victims' underlying offenses shed light
on whether the victims posed any security risk and whether Hill reasonably

perceived any threat, two factors that bear on whether Hill's uses of force were objectively unreasonable.  *See Kingsley*, 576 U.S. at 397.  Accordingly, such evidence is relevant.

Moreover, evidence about the victims' alleged crimes is inextricably intertwined with evidence regarding the charged offenses in this case.  After all, the government will introduce evidence, through recordings and testimony, that Hill confronted and questioned at least six of the seven victims about the circumstances of their alleged crimes, either immediately before he placed them in restraint chairs or while they were strapped down.  In addition, the government intends to introduce evidence, including video footage, demonstrating that the victims were not actively resisting at the time of their arrests or during their transport to the Jail.  Thus, evidence about the facts surrounding the underlying arrests and cases, including testimony from the victims and others, will be necessary to complete the story of Hill's crimes.  Such intrinsic evidence is admissible.

### G. Evidence of Hill's relationships with potential fact witnesses and Hill's interest in Batman and associated symbols is relevant to whether Hill's uses of force were objectively unreasonable and whether he acted willfully.

Hill seeks to preclude evidence of his personal relationships and his interest in Batman and associated symbols.  (Doc. 66 at 7.)  But evidence of Hill's personal relationships with others with whom he interacted when ordering some of the victims into restraint chairs bears on: his motive, whether his actions were objectively unreasonable, and whether he acted willfully.  For instance, the

government anticipates introducing evidence that Hill texted with his girlfriend, who is also a law enforcement officer, to let her know the Jail was expecting one of the victims who had given her trouble in the past and to show her a video in which the victim was strapped into a restraint chair while he (Hill) was lecturing the victim.  Evidence that the texts were between Hill and someone with whom he had a romantic relationship provides important context from which a jury could infer Hill's motive, whether Hill's use of force was justified, and whether Hill acted willfully.

In addition, evidence about Hill's interest in Batman and associated symbols is intertwined with his leadership of the CCSO and the Jail and the environment of retaliation he fostered there.  As noted above, such evidence about the atmosphere in the CCSO is relevant both to whether Hill's uses of force were objectively unreasonable and whether he acted willfully.  (*See supra* at 11-12.)

## 2.  None of the relevant evidence is unfairly prejudicial.

Courts may exclude relevant evidence when its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury.  Fed. R. Evid. 403.  Here, none of the relevant evidence discussed above would cause Hill any unfair prejudice, confuse the issues, or mislead the jury.  And even if there is some minimal risk of any of these, the risk does not substantially outweigh the probative value of the evidence, all of which is directly relevant to the elements the government must prove beyond a reasonable doubt.

**Conclusion**

For the foregoing reasons, this Court should deny Hill's motion in limine and reserve judgment on whether to admit the challenged evidence.


Respectfully submitted,

RYAN K. BUCHANAN
    *United States Attorney*


/s/BRENT ALAN GRAY
    *Assistant United States Attorney*
    Georgia Bar No. 155089
    Brent.Gray@usdoj.gov


/s/BRET R. HOBSON
    *Assistant United States Attorney*
    Georgia Bar No. 882520
    Bret.Hobson@usdoj.gov


    600 U.S. Courthouse
    75 Ted Turner Drive S.W.
    Atlanta, GA 30303
    (404) 581-6000
    fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Drew Findling
Marissa Helene Goldberg
The Findling Law Firm, P.C.
Suite 600, One Securities Centre
3490 Piedmont Road NE
Atlanta, GA 30305
drew@findlinglawfirm.com
marissa@findlinglawfirm.com

Lynsey Morris Barron
Barron Law LLC
3104 Briarcliff Road
P.O. Box 29964
Atlanta, GA 30359
lynsey@barron.law

*Attorneys for Defendant Victor Hill*

August 30, 2022

/s/ Bret R. Hobson

Bret R. Hobson

*Assistant United States Attorney*