IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

VICTOR HILL

Criminal Action No.

1:21-CR-00143-ELR-CCB

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Brent Alan Gray and Bret R. Hobson, Assistant United States Attorneys for the Northern District of Georgia, files this reply in support of its motion in limine.  In that motion, the government sought to preclude Defendant Victor Hill from offering arguments and evidence improperly aimed at jury nullification, including: (i) insinuations that the government pursued this prosecution for an improper purpose, that this is a novel theory of prosecution, that Hill's misconduct is minor compared to other law enforcement misconduct, or that the government could have addressed Hill's misconduct through a civil suit or other remedies short of criminal prosecution; (ii) implications that Hill's previous good acts, accolades, commendations, or accomplishments excuse Hill's misconduct; (iii) suggestions that Hill's suspension from office has negatively impacted the community or that his conviction in this case would do so; (iv) suggestions that the victims' past or subsequent misconduct or bad acts justify Hill's unrelated infliction of harm to the victims; (v) suggestions that unrelated incidents of

violence in the jail justify Hill's abusive law enforcement practices; and/or (vi) arguments that Hill's suspension from office should satisfy the need for justice in this case or other discussions of the potential penalties Hill faces if convicted. (Doc. 65 at 1-2.)

In Hill's response, he offers no justification for presenting evidence and argument in several of these categories.  Rather, he argues only that he should be able to present (1) evidence of an absence of other prosecutions or civil suits for misuse of restraint chairs, "evidence contrasting his conduct with other conduct that has been held to be criminal," and evidence and argument he used the restraint chair for "general deterrence" rather than in response to actions the victims took in the moment, because such evidence supposedly bears on his intent (doc. 68 at 5-7); (2) evidence of the victims' prior conduct to the extent it led Hill to believe they were violent or a risk of flight (*id.* at 7); and (3) evidence of witnesses' bias and evidence of Hill's "good character and/or good acts" (*id.* at 8).

As to Hill's first argument, because he fundamentally misunderstands the specific intent requirement of 18 U.S.C. § 242, he improperly seeks to introduce irrelevant and prejudicial evidence and arguments that do not bear on his intent. As to his second argument, evidence of the victims' prior bad acts is irrelevant to whether they were resisting at the time Hill chose to use force against them, and such evidence would be unfairly prejudicial.  As to Hill's third argument, while he is correct that he may introduce evidence of witnesses' bias, he is incorrect in

claiming that he may introduce evidence of his own good acts to establish his good character.

### Argument and Citation of Authority

In order to convict Hill of violating 18 U.S.C. § 242, a jury must find beyond a reasonable doubt that Hill "acted '(1) willfully and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States.'" *United States v. Brown*, 934 F.3d 1278, 1294 (11th Cir. 2019) (quoting *United States v. House*, 684 F.3d 1173, 1198 (11th Cir. 2012)).

As alleged in the indictment, the constitutional right at issue in this case is "the right to be free from the use of unreasonable force by law enforcement officers." (Doc. 49 at ¶¶ 63, 65, 67, 69, 71, 73, 75.)  And this Court, in its order denying Hill's motion to dismiss the indictment, explained that "the counts in the operative indictment fit within the Eleventh Circuit's well-defined case law precluding the use of force against a detainee who has stopped resisting, absent any legitimate nonpunitive governmental purpose to continue such restraint." (Do. 58 at 7-8.)  In addition, this Court adopted the Magistrate Judge's Report and Recommendation, which further explained that the question here is whether Hill "continue[d] to use force after a detainee has clearly stopped resisting." (Doc. 45 at 17 (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952-53 (11th Cir. 2019)).)  The government thus must prove that Hill acted (1) willfully, and (2) under color of law (3) to deprive the victims of the right to be free from the use of unreasonable force by law enforcement officers – *i.e.*, by continuing to use force without a permissible justification when the victim detainees were not resisting.

1. **Evidence of an absence of other criminal prosecutions and civil suits for misuse of restraint chairs, evidence contrasting Hill's conduct with other more egregious uses of force, and evidence and argument concerning a need for general deterrence in the jail are irrelevant to whether Hill acted willfully; contrary to Hill's suggestion, the government need not prove he knew his conduct was unlawful.**

At the outset, it is difficult to imagine what admissible evidence Hill might offer to establish a supposed absence of other prosecutions and suits for misuse of the restraint chair or to describe other more egregious uses of force by other officers in other cases.  But more importantly, such evidence is irrelevant to any issue in this case, as is evidence and argument concerning the purported need for general deterrence at the jail.

Hill argues that such evidence bears on his intent, suggesting that the government must prove that "Hill knew his conduct was illegal."  (Doc. 68 at 5; *see also id.* at 4 (""[T]he government must prove that the defendant's conduct was objectively unreasonable *and that he knew it was forbidden by law*." (emphasis added)).)  But this is a misstatement of the law.

To prove Hill acted willfully, the government need prove only that Hill acted "with 'a specific intent to deprive a person of a federal right made definite by decision or other rule of law,' or 'in open defiance *or in reckless disregard* of a constitutional requirement which has been made specific and definite.'"  *Brown*, 934 F.3d at 1296 (emphasis added) (quoting *House*, 684 F.3d at 1199-1200); *see also United States v. Reese*, 2 F.3d 870, 885-86 (9th Cir. 1993) (explaining that in a § 242 excessive force case, "the requisite specific intent is the intent to use more force

than is necessary under the circumstances," and the defendants did not need to know "their use of force was unlawful").  In other words,

> The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law.  While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," *the person need not be aware of the specific law or rule that [his] conduct may be violating*.

Eleventh Circuit Pattern Jury Instructions, Criminal Cases, Basic Instruction B9.1A (emphasis added).

The government must thus establish that Hill specifically intended to "do something the law forbids" – *i.e.*, use unreasonable force, which is more force than necessary – but it need not prove he knew his specific conduct was unlawful.  And as "the Eleventh Circuit has made clear, force is force, whether in the form of a punch, spray, taser, or restraint."  (Doc. 45 at 17 n.3 (citing *Piazza*, 923 F.3d at 956).)  Thus, "[t]here is no meaningful distinction between what [Hill] terms 'passive' force (restraining someone for hours) and more 'active' force (punching someone in the face, for example)."  (*Id.*)

Accordingly, whether others have been prosecuted or sued for use of restraint chairs is irrelevant to whether Hill intended to use more force than necessary by continuing to use force on compliant, non-resisting detainees.  Evidence of an absence of such prosecutions and suits would not make it more or less probable that Hill intended to use unreasonable force.

Likewise, evidence that other officers "use their knees to cut of[f] oxygen flow to an arrestee," "repeatedly tase inmates who are lying prone on the ground," or "restrain and then physically torture inmates" (doc. 68 at 6) does not make it more or less probable that Hill intended to use unreasonable force.  The only purpose for Hill to introduce such evidence is to impermissibly suggest the jury acquit him because his conduct is less severe than some other officers.

Finally, evidence of other unrelated incidences of violence at the jail that preceded or post-dated Hill's uses of force, even if they led Hill to "believe[] that there was need to use aggressive techniques to maintain an environment of control" (doc. 68 at 7), is irrelevant to whether Hill intended to use unreasonable force.  And while Hill may of course testify about whatever reason he had for his actions, Hill's counsel should not be allowed to argue to the jury that "general deterrence" is a legitimate nonpunitive governmental purpose for placing the victims in restraint chairs.  Surely the Court would not allow any argument that it is lawful to tase compliant, unresisting detainees as a general deterrent.  So too, the Court should not permit any argument that it is lawful to place compliant, unresisting detainees in restraint chairs for hours to send a message to the rest of the jail's population.  The argument Hill seeks to make – that because jails are dangerous places, otherwise excessive force becomes permissible if used to keep order – is contrary to law and a naked appeal for jury nullification.

**2. Evidence of the victims' prior bad acts is irrelevant to whether they were resisting at the time Hill chose to use force against them, and such evidence would be unfairly prejudicial.**

Whether Hill's uses of force were objectively unreasonable is determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The following non-exclusive list of considerations may be relevant to the jury's determination whether the force used was objectively unreasonable:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* "Once a prisoner has *stopped resisting* there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Piazza*, 923 F.3d at 953 (quoting *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008), *abrogated on other grounds by Kingsley*, 576 U.S. 389) ("In other words, because force in the pretrial detainee context may be defensive or preventative—but never punitive— the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply.")

Accordingly, this Court should not permit Hill to meet evidence that the victims were complying and not resisting with evidence that on some prior occasions they tried to escape or were violent.  Evidence of those prior bad acts is

irrelevant to whether Hill continued using force impermissibly.  And even if those prior bad acts had some minimal relevance to whether Hill's later uses of force were objectively unreasonable, that relevance is substantially outweighed by the risk of unfair prejudice by suggesting the jury conclude the victims were bad people that deserved to be placed into restraint chairs, despite the fact they were complying and not resisting, solely due to earlier, unrelated misconduct.

### 3.  Evidence of specific examples of Hill's good conduct is inadmissible.

Just as the government may not argue to the jury that it should convict because a defendant is a bad person, *Old Chief v. United States*, 519 U.S. 172, 181 (1997), neither is the defense permitted to suggest that the jury should overlook a defendant's use of excessive force because he was otherwise a good law enforcement officer, *see United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("[N]either the court nor counsel should encourage jurors to violate their oath."); *United States v. Melton*, No. 3:08-cr-107, 2008 WL 4829893, at *1-*2 (S.D. Miss. Nov. 4, 2008) (excluding evidence in a § 242 case of defendant police officer's reputation for fighting crime on the ground that it was "aimed at inducing jury nullification").

The Federal Rules of Evidence allow a party to introduce evidence of pertinent traits of character, Fed. R. Evid. 404(a), through "testimony about the person's reputation or by testimony in the form of an opinion," Fed. R. Evid. 405(a).  But specific instances of conduct are not admissible where, as here, character is not an element of the offense.  *See* Fed. R. Evid. 405(b).  Accordingly, evidence of specific acts that form the basis for the character witness's opinion or

reputation testimony is not admissible.  *See, e.g.*, *United States v. Ellisor*, 522 F.3d 1255, 1270-71 (11th Cir. 2008); *United States v. Camejo*, 929 F.2d 610, 612-13 (11th Cir. 1991) ("Evidence of good conduct is not admissible to negate criminal intent.").

By operation of these rules, evidence of any award or good act offered to show that Hill was a good law enforcement officer is inadmissible.  Such evidence is not pertinent to the charged crimes and also constitutes inadmissible specific acts.  *See, e.g.*, *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (affirming trial court's exclusion of testimony about defendant's prior "good acts" as inadmissible character evidence); *United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (affirming trial court's exclusion of evidence of defendant police officer's awards and commendations because the defendant's purported "dedication, aggressiveness and assertiveness" were not "pertinent to" or "an essential element of" the charged crime (internal quotation marks omitted)); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (affirming trial court's exclusion of evidence of defendant police officer's awards and commendations because "the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the [charged] crimes"); *United States v. Warren*, No. 10-154, 2010 WL 4668345, at *3 (E.D. La. Nov. 4, 2010) (excluding evidence of police officer's rescue missions during Hurricane Katrina as "inadmissible evidence of specific instances of conduct").

Accordingly, at the trial, defense character witnesses should not be permitted to testify about specific instances of Hill's purported good character, including any awards or commendations he may have received, and good deeds he might have done, or any supposed positive effects from his term as sheriff (or supposed negative effects during his absence).

Moreover, if the defense elects to put Hill's character in issue, the prosecution is entitled to respond in two ways: by cross-examining the character witness about specific instances of conduct to rebut evidence of the character trait at issue, and by calling its own character witnesses in rebuttal. *See, e.g.*, *United States v. Adair*, 951 F.2d 316, 319 (11th Cir. 1992) ("It is well settled that once a witness has testified about a defendant's good character, cross-examination inquiry is allowed as to whether the reputation witness has heard of particular instances of conduct relevant to the trait in question.").

This inquiry into specific instances of conduct is permissible "because the inquiry is not directed toward proving the conduct of the subject but rather toward evaluating the credibility of the character witness." *United States v. Morales De Carty*, 300 F. App'x 820, 827 (11th Cir. 2008) (citing *Adair*, 951 F.2d at 319). Questions about specific instances of the defendant's conduct, "if answered affirmatively, [] might cast serious doubt on the witness's testimony, thus serving a legitimate rebuttal function, and [], if answered negatively, [] would show that the witness did not know enough about the accused's reputation to testify." *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996) (internal quotation marks omitted); *see also Adair*, 951 F.2d at 320 (explaining that such

10

questions "show whether the witnesses had adequate knowledge of the [defendant's] reputation" and are "relevant to the character traits raised at trial"). "The Supreme Court envisioned this type of questioning when it held that '[t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law had kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.'" *Adair*, 951 F.2d at 320 (quoting *Michelson v. United States*, 335 U.S. 469, 479 (1948)).

Accordingly, if the defense chooses to elicit testimony from character witnesses that Hill is an honest person or a good law enforcement officer, the Federal Rules of Evidence would permit the government to probe the basis for their testimony by asking those witnesses whether they were aware of specific instances of conduct inconsistent with those traits.

**Conclusion**

For the foregoing reasons, this Court should grant the government's motion in limine and preclude Hill from offering arguments and evidence improperly aimed at jury nullification, including those identified in the government's motion.

Respectfully submitted,

RYAN K. BUCHANAN
    *United States Attorney*

/s/BRENT ALAN GRAY
        *Assistant United States Attorney*
    Georgia Bar No. 155089
    Brent.Gray@usdoj.gov

/s/BRET R. HOBSON
        *Assistant United States Attorney*
    Georgia Bar No. 882520
    Bret.Hobson@usdoj.gov

    600 U.S. Courthouse
    75 Ted Turner Drive S.W.
    Atlanta, GA 30303
    (404) 581-6000
    fax (404) 581-6181

12

### Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Drew Findling
Marissa Helene Goldberg
The Findling Law Firm, P.C.
Suite 600, One Securities Centre
3490 Piedmont Road NE
Atlanta, GA 30305
drew@findlinglawfirm.com
marissa@findlinglawfirm.com

Lynsey Morris Barron
Barron Law LLC
3104 Briarcliff Road
P.O. Box 29964
Atlanta, GA 30359
lynsey@barron.law

*Attorneys for Defendant Victor Hill*

September 13, 2022

/s/ BRET R. HOBSON
BRET R. HOBSON
*Assistant United States Attorney*