**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>VICTOR HILL,<br><br>    Defendant. | Case No. 1:21-CR-00143-ELR-CCB<br><br>**SENTENCING MEMORANDUM** |

### DEFENDANT HILL'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, Victor Hill (hereinafter referred to as "Mr. Hill"), by and through his attorneys of record, and files this memorandum in support of his sentencing position. Mr. Hill hereby moves this Honorable Court for a downward departure and/or a variance below his otherwise advisory guideline imprisonment range and in support of a reasonable sentence which is no greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553(a)(2).

### INTRODUCTION

The above-referenced second superseding indictment charged defendant Mr. Hill with the following counts: seven individual Counts of Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242.

Mr. Hill exercised his Constitutional right to a trial by jury. On October 26, 2022, Mr. Hill was found guilty by jury trial of counts 1-4, 6, and 7. Mr. Hill was found not guilty on count 5.

1

On February 21, 2023, counsel for Mr. Hill received the final disclosed PSR. The probation officer calculated the defendant's total offense level at Level 27, with a criminal history category of I, resulting in a guideline sentencing range of 70-87 months.

Mr. Hill timely filed objections to the guidelines as calculated by the initial PSR. As will be detailed below, Mr. Hill contends that the guidelines as calculated are legally incorrect and the resulting guideline range is significantly higher than law and justice demands. Mr. Hill requests that the Court consider his history and characteristics pursuant to 18 U.S.C. § 3553(a)(1) and the substantial support he has from his family and community as indicated in the numerous letters provided to the Court (attached hereto as Exhibit A).  Further, Mr. Hill respectfully requests that this Court consider the factors incorporated in 18 U.S.C. § 3553 as well as other judicial decisions and notions of fairness, in determining his sentence.

## LEGAL STANDARD

As this Court is fully aware, the United States Supreme Court made the sentencing guidelines advisory by invalidating the statutory provision that otherwise makes them mandatory (18 U.S.C. § 3553(b)) and severing the provision from the remainder of the statute. See United States vs. Booker, 543 U.S. 220 (2005). As the Supreme Court has repeatedly explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Peugh v. United States, 569 U.S. 530, 536 (2013) (quoting Gall v. United States, 552 U.S. 38, 49 (2007)). After correctly calculating the Guidelines range, the Court must next consider the statutory factors set forth in 18

U.S.C. §3553(a). *Gall,* 552 U.S. at 49–50. As directed by the Supreme Court, a district court "may not presume that a sentence within the applicable Guidelines range is reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009). Rather, after calculating the appropriate Guideline range, sentencing courts must consider the §3553(a) factors, make an individualized assessment, and impose a sentence that is "sufficient, but not greater than necessary" to meet the objectives of sentencing. § 3553(a); Gall, 552 U.S. at 50n.6.

Although the §3553(a) factors are difficult to quantify, they are potentially far more instructive for sentencing purposes than the core case facts, and vitally important to the fairness that 3553(a) attempts to achieve. In detailing Mr. Hill's history, personal and professional life, and the case facts as we understand them, the defense does not intend to minimize the offense. In this case, we respectfully submit that the § 3553(a) factors—including Mr. Hill's "history and characteristics" and the need for the sentence imposed to provide "just punishment," - weigh heavily in favor of a sentence significantly below the sentence recommended by the advisory Sentencing Guidelines and below the sentence recommended by Probation and the government. A review of the factors that the Court must consider under §3553(a), as described below, supports this view. The defense urges the Court to consider the following:

    A. **Circumstances of the Offenses of Conviction**

The government chose Mr. Hill and this case to test a novel theory of prosecution: whether placing detainees in a restraint chair – with no other violent act– constitutes excessive force amounting to punishment without due process of law. The jury, by their verdict, found that it does. However, while the jury verdict is respected, no person in this Circuit has ever been

criminally prosecuted or even held civilly liable for such conduct. This is a true case of first impression. There was never any attempt by the government or other agency to inform Mr. Hill and the Clayton County Sheriff's Office about their concerns around the use of the restraint chair and see if there could be an effort to conform his conduct (as is often the tool utilized by the Department of Justice in these sorts of cases: i.e. by way of Settlement Agreement and oversight). Instead, Mr. Hill was arrested on criminal charges for his use of the restraint chair, a tool utilized in countless detention facilities across the State and the country.  We have argued and continue to argue that Mr. Hill could not possibly have had fair warning that his use of the restraint chair in the alleged manner was criminal.

However, even if Mr. Hill's due process right to fair warning were not violated, we believe the above circumstances are relevant and extremely important when determining a proper punishment.  Mr. Hill had no intention of violating the civil rights of the detainees. He sought to maintain a safe, orderly, and well-functioning County Jail, both for the staff and for the detainees.  Indeed, from the day he took office, Mr. Hill used innovative and outside the box measures to achieve these goals.  And specifically, his role and actions in these offenses, while regrettable in hindsight, were monumentally less than those convicted of similar crimes involving excessive force.  Indeed, there was no violence, assaultive behavior, unlawful arrest, or intention to cause physical injuries to the detainees – factors seen in nearly all similarly charged prosecutions.

**B.  18 U.S.C. § 3553(a)(1): The Personal History and Characteristics of Mr. Hill.**

Mr. Hill was born on January 26, 1965, in Charleston, South Carolina, to Victor Hill, Sr. and Katherine Hill-Pickney, and is the oldest of their two children.  The elder Mr. Hill died of cancer in 2000 and Ms. Hill-Pickney died in 2021, due to complications from Alzheimer's disease.  Vincent Hill, Mr. Hill's brother, died in 2017 after suffering from a drug overdose.

When he was four years-old, his parents divorced.  Mr. Hill's father, who was in the Navy, was constantly moving around, and did little to help raise him.  Instead, Mr. Hill was raised primarily by his mother and maternal grandmother, whom he adored.  He recalls having extremely close and influential relationships with both of them. As a child, Mr. Hill was fascinated with comic books and martial arts. However, his main interest was unquestionably his love of police, and of law enforcement. He carried a toy badge constantly and dreamed of becoming a police officer.

When Mr. Hill was fourteen years-old, one of his good friends was murdered.  The killer was eventually caught by Detective Eugene Frazier, who would later become a close friend and mentor to him.  This incident, as much as anything, solidified Mr. Hill's interest in law enforcement.  Not only did the loss sadden and traumatize him because of his closeness to it, but he realized the outsized impact that law enforcement officers could have.  Whether his passion for those who enforce the law arose out of a sense of right and wrong, or from the void left by his father, comic book heroes, his friend's murder, or martial arts, it was sparked and destined to be from the time he was a child.

In 1983, when Mr. Hill was still a teenager, he was hired by the Charleston Police Department as a cadet. He saw policeman chasing criminals, helping people, and making a

5

difference.  He worked in various police departments over the next several years, learning what it meant to be a policeman and observing what made certain officers successful and effective, and what did not.  Mr. Hill vividly remembers his first police chief, Reuben Greenberg, whom he first met when Chief Greenberg spoke to his senior high school class.  He was in awe of Chief Greenberg, who was the first, and last, black Chief of Police in Charleston. Chief Greenberg was ahead of his time, in that he was known for using innovative police strategies to lower the crime rate.  He was tough on crime, but was proactive and progressive, using tactics such as following drug dealers and then parking squad cars in front of known drug houses.  Mr. Hill admired, respected, and modeled himself after Chief Greenberg, and he would ultimately borrow many of these ideas and use them as his own when he became sheriff.   Mr. Hill quicky became fascinated not only with reactive policing, but with studying trends and how enacting proactive measures could help stop crime before it happened, much like a game of chess.  He became a student of law enforcement tactics.  Jerome Hill, Victor's younger brother, says:

> "[I] marveled at [my] older brother being a police officer in Charleston.  Back in those days, there weren't many heroes walking around in my community that looked like him or had the courage to be a police officer.  It was a social norm frowned upon by many where I grew up.  As he ascended through the ranks and I got older, our discussions evolved into my budding desire to follow him in law enforcement. "

   Although Mr. Hill loved the various positions he held in South Carolina, he always aspired to grow and ascend through the ranks.  In 1991, he moved to Georgia, and was hired by the Clayton County Police Department.  He ultimately joined the hostage negotiation task force

6

and made detective.  Mr. Hill spent nearly a decade as a detective investigating robberies and homicides.

In 2002, in his first bid for public office, Mr. Hill ran for state representative and won. After two years as a representative, he decided not to seek reelection and instead chose to run for Sheriff of Clayton County after seeing an opportunity to land his dream job.  In a historic win, he became the first African American Sheriff of Clayton County. For Mr. Hill, it was not only triumphant, but the culmination of everything he had dreamed of since he was a child.  He wanted to make a real difference in Clayton County. Victor served as the Clayton County Sheriff from 2005 to 2008, and again from 2013 to 2022.

Mr. Hill has led a quite exceptional life.  As someone who was raised without a father, and who suffered through the traumatic killing of his friend as a teenager, he used his experiences to mold himself into a true crime fighter. Through nothing but sheer determinism, hard work, honesty, trust among his constituency, and willingness to do whatever it took to transform his community, he earned the position that he sought from the time he was a child – Sheriff.  Not satisfied to obtain that title, he completely transformed the County Jail, and the County itself, and changed what it meant to be Sheriff in Clayton County.  Victor has led a life as an extremely hard worker, leader, and role model. He has never married and has no children. Instead, he has dedicated himself to his work and to his job.  For better or worse, since he was a small child, he dedicated himself to the singular goal of becoming a difference-making law enforcement officer.  He ultimately did this through a variety of ways, some more popular than others.  And he did so as a black man in a county that historically only elected white sheriffs. Once elected, his tremendous number of good deeds and positive changes drastically outweigh

7

the charged conduct in this case. Mr. Hill was and is an inherently good person, an asset to his community, and one who cares deeply about affecting positive change.

The defense strongly urges the Court to consider this history, for which the Guidelines entirely fail to account, which should matter profoundly when determining one's punishment. While the crimes for which Mr. Hill was convicted merit punishment, we firmly believe they are isolated and not representative of his true character. We respectfully submit that the portrait of Mr. Hill painted by the numerous letters of support, submitted by a diverse assortment of people from different walks of life, reflects his true character. The offenses of conviction must be weighed and considered in conjunction with his previous 57 years of good and often exemplary conduct, and decades of service to various communities. Mr. Hill's reputation can be summed up by Darryl Jordan, a retired Georgia State Representative, who says:

> "Victor Hill is an active hands-on caring, affectionate, sensitive, and compassionate person. He has participated in several charitable and social campaigns to improve our community. As Sheriff of Clayton County he has been an outstanding Sheriff with his Junior Sheriff Deputy, Holiday Food Giveaways, Halloween candy safety program, drug houses eliminations and his gun safety training programs. He has demonstrated his love for people by always being available to help all citizens many who could not protect themselves. He is very approachable in the community, and he cares about my family as if my children were his own."

All of the above factors and history clearly distinguish Mr. Hill from the majority of offenders convicted of similar crimes and, in combination with his career in public service and community activities, are factors that may warrant a non-guidelines sentence.

### C. Defendant's Objections to the Pretrial Sentencing Report

Mr. Hill's objections to the Guideline calculations in his PSR fall into two categories: 1) the 2-level adjustments that require additional criminal responsible participants, and 2) enhancements based on the victims being physically restrained. The PSR's imposition of these enhancements/adjustments in various counts incorrectly calculated Mr. Hill's total offense level to be 27, if the Court sustains the below-objections, the total offense level should be a level 21.

### a. The Proper Base Guidelines Offense Level Should be Calculated Under U.S.S.G. § 2H1.1(a)(3) and Not 2H1.1(a)(2).

The proper base Guidelines offense level for a violation of 18 U.S.C. § 242 is 10, based on U.S.S.G. § 2H1.1(a)(3). The defendant objects to the base level offense listed in U.S.S.G. § 2H1.1(a)(2), as the offense did not involve two or more participants. To qualify for the enhancement under U.S.S.G. § 2H1.1(a)(2), the offense must have involved "two or more participants." A "participant is defined as 'a person who is *criminally responsible* for the commission of the offense, but need not have been convicted." *Id*. (Emphasis added). There was insufficient evidence in the trial record to support that the defendant supervised or directed another "criminal participant" in the offenses. Although the trial testimony revealed that Mr. Hill directed members of his staff to place the detainees in the restraint char, these staff members were not "criminal participants." None of the deputies were charged, nor did they testify under the protection of a cooperation agreement. No plea deals were offered to any members of the staff. None of the staff members who testified at trial had a lawyer present, nor were any

9

admonitions regarding self-incrimination given by the government or the Court during their testimony.  Presence alone does not satisfy the burden for the application of this adjustment, the other individuals must commit all the elements of the crime with the requisite *mens rea* to be considered a *participant* under this section.  See generally, United States v. Helmy, 951 F.2d 988 (9th Cir. 1992); United States v. Rowley, 975 F.2d 1357, (8th Cir. 1992); United States v. Bisong, 645 F.3d 384, 396 U.S. App. D.C. 63, 2011 U.S. App. LEXIS 10337 (D.C. Cir. 2011); and United States v. McCoy, 242 F.3d 399  (D.C. Cir. 2001).

It should be noted that the government has indicated in their Sentencing Memorandum (Doc. 110) that they concur with this objection and agree that the base offense level should be calculated as a level 10 pursuant to U.S.S.G. § 2H1.1(a)(3).

### b. The Court Should Not Apply the 2-Level Enhancement Pursuant to U.S.S.G. § 3B1.1(c)

Similar to the argument above, the 2-level enhancement under U.S.S.G. § 3B1.1(c), is not applicable.  To qualify for the enhancement under USSG § 3B1.1, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." USSG § 3B1.1., cmt. n.2.  Again, a "participant is defined as 'a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id*.   There was insufficient evidence in the trial record to support that the defendant supervised another criminal participant in the offenses.  While Mr. Hill, in his role as Sheriff, certainly had a leadership role over the deputies, no one else was criminally responsible for the offenses charges when they placed the detainees in the restraint chair.  Indeed, use of the restraint chair is certainly not unlawful, and is

appropriately and widely used in prisons and detention facilities across the State and the country as a safety and precautionary measure. The deputies who testified during this trial were unaware of the reasons and actions which preceded the orders to place the detainees in the restraint chair, as is often the case in a hierarchical facility where duties and protocols are often relayed to fellow deputies. Simply put, no one else was criminally responsible for placing the detainees in the restraint chair. Thus, the enhancement under § 3B1.1 is inapplicable. See United States v. Helmy, 951 F.2d 988 (9th Cir. 1992); United States v. Rowley, 975 F.2d 1357, (8th Cir. 1992); United States v. Bisong, 645 F.3d 384, 396 U.S. App. D.C. 63, 2011 U.S. App. LEXIS 10337 (D.C. Cir. 2011); and United States v. McCoy, 242 F.3d 399 (D.C. Cir. 2001).

It should be noted that the government has indicated in their Sentencing Memorandum (Doc. 110) that they concur with this objection and agree that this enhancement is not applicable.

    **c.** **The Court Should Not Apply the 2-Level Enhancement Pursuant to U.S.S.G. § 3A1.3.**

Mr. Hill objects to the adjustment under U.S.S.G. § 3A1.3, which calls for a 2-level enhancement if the victim was physically restrained. Indeed, it would be improper for the Court to apply a two-level enhancement on the grounds that the detainees were physically restrained. Such an enhancement would constitute impermissible double-counting. Indeed, to apply § 3A1.3 to the offense conduct related to restraining the detainees would punish Mr. Hill for the same harm that was fully accounted for in the base offense level offenses for 18 U.S.C. § 242, which charged him with violating the civil rights of the detainees for the act of physically retaining without a legitimate nonpunitive purpose, and nothing else. "Impermissible double counting occurs when

one part of the Guidelines is applied to increase the defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the Guidelines." United States v. Watkins, 667 F.3d 254, 261 (2d Cir. 2012). Mr. Hill was convicted of physically restraining the detainees and, in doing so, violating their civil rights. Accordingly, the base offense level for all Counts already includes the concept of "physical restraint."

The argument against 3A1.2 is grounded in commentary Note 2 to the guideline: "Do not apply this adjustment where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by §2A4.1 (Kidnapping, Abduction, Unlawful Restraint))." Under the jury instructions read by the court at trial, the first element was the right of the named individuals to be free from force amounting to punishment, and the force alleged and proven was restraint. The jury had to find that the individuals were restrained in order to convict. This is different from a case where the force amounting to punishment would be, for example, tasing an inmate or beating an inmate, and one officer happened to restrain them while the other was applying the force. But where the force is restraint, it is not a separate element and is precluded by Note 2.

This enhancement therefore should not be applied to any of the offense groups.

### d. Correct Guideline Calculation

After taking into account the applicable increases, the applicable correct Guideline offense level is 21, which is considered Zone D by the U.S. Probation Office. The corresponding Guideline range is 37-46 months.

**CONCLUSION**

Based on the above, Mr. Hill respectfully requests that this Court impose a substantial downward departure and/or a variance below his otherwise advisory Guideline imprisonment range while considering his lifetime of service and achievements within the community, in addition to notions of fairness, due process, and equity. To that end, we are requesting that the Court sentence Mr. Hill to a term of Probation, in addition to home confinement, and require him to pay a fine determined by the Court. The defense believes that such a sentence is wholly consistent with the case facts, Mr. Hill's history, and ultimately, will best serve the community that he has honorably served for decades.

Respectfully submitted,

*/s/Drew Findling*_____
Drew Findling
Georgia Bar No. 260425

*/s/Marissa Goldberg*_____
Marissa Goldberg
Georgia Bar No. 672798

The Findling Law Firm
3575 Piedmont Road
Suite 1010
Atlanta, Georgia 30305
404.460.4500

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 1:21-CR-00143-ELR-CCB |
| vs. | ) **SENTENCING MEMORANDUM** |
| VICTOR HILL, | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel for the opposing party in the foregoing matter with a copy of the within and foregoing Motion:

SENTENCING MEMORANDUM

By electronic service:

    Assistant United States Attorney Brent Gray
    Assistant United States Attorney Bret Hobson

This 10th day of March, 2023

    Respectfully Submitted,

    s/*Marissa Goldberg*
    Marissa Goldberg
    Georgia Bar No. 672798