UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| ) | |
| v.        ) | No. 1:21-CR-143-ELR-CCB |
| ) | |
| ) | |
| **VICTOR HILL,** ) | |
| ) | |
| **Defendant.** ) | |

## VICTOR HILL'S MOTION FOR BOND PENDING APPEAL

Victor Hill has proven himself a model defendant since his release on bond almost two years ago. (Dkt. 9.) And because this Court granted a substantial variance in sentencing him to 18 months' imprisonment—less than half of what the Guidelines called for—there is a very real likelihood that he will have served his sentence in full before his appeal is final.[1] (*See* Dkt. 112.) Because Mr. Hill will raise at least three issues on appeal that could result in reversal of his conviction—

---

[1] Mr. Hill will likely be eligible for credits under the First Step Act as well as good time credits, so it is highly unlikely he will serve the full 18 months. Additionally, even though this Court recommended that Mr. Hill be designated to FPC Montgomery "or to a minimum-security camp in order to minimize any danger that may come to him based on his status as a former law enforcement officer" (Dkt. 113 at 3), the Bureau of Prisons designated him to FCI Forrest City Low in Arkansas, which does not have a camp (Dkt. 120).

one of which would prohibit retrial—this Court should allow him to remain on bond pending appeal in the event his conviction is overturned.

## ARGUMENT

Title 18, United States Code 3142(b) sets a rebuttable presumption that defendants are not entitled to bond while their appeals are pending, which can be overcome. *See United States v. Giancola*, 754 F.2d 898, 900-01 (11th Cir. 1985). Indeed, the statute did not eliminate the possibility of bond pending appeal but just limited its availability to only the most meritorious of appeals. *See id.* at 900. A defendant seeking to remain on bond must satisfy four requirements: (1) he is not likely to flee or pose a danger to others or the community; (2) the appeal was not taken for the purpose of delay; (3) the appeal raises substantial questions of law or fact; and (4) if those questions are resolved in the defendant's favor on appeal, there will likely be a reversal of his conviction or order for a new trial. *Id.* at 901; *see also* 18 U.S.C. § 3142(b). Mr. Hill easily satisfies these four factors.

### I. The First Two *Giancola* Factors Are Not in Dispute.

*First*, Mr. Hill is not likely to flee or pose a danger to society if released. He has been on a liberal bond since his arraignment in this case without a single incident. With the government's consent, this Court allowed him to remain on

bond after he was convicted and sentenced in this case, which already required the Court to find by clear and convincing evidence that he poses no such threat. *See* 18 U.S.C. § 3143(a). There has been no change in circumstance that should alter that finding.

*Second*, this appeal is not taken for the purposes of delay. Mr. Hill raises very real questions that call into question the legitimacy not only of his conviction but of the government's decision to prosecute him in the first place. That issue is one of first impression in the Eleventh Circuit and on which that court will likely grant the rare oral argument. Any reasonable defendant would pursue his right to appeal in this circumstance.

Because the first two factors weigh heavily in favor of this Court allowing Mr. Hill to remain on bond, the only issue in dispute is whether there are substantial issues Mr. Hill will raise on appeal that, if resolved his way, could result in his conviction being reversed.

## II. Mr. Hill Will Raise "Substantial Questions" on Appeal that Support Relief Under the Third and Fourth *Giancola* Factors.

An appellate question is "substantial" if it is more than frivolous, meaning it is a close call or could well be decided the other way. *See Giancola*, 754 F.2d at 901; *see also United States v. Fernandez*, 905 F.3d 350, 354 (11th Cir. 1990) (affirming the district court's denial of an appeal bond where the challenges were to the sufficiency of the evidence and rulings that would be reviewed for an abuse of

discretion). *Giancola* does not require Mr. Hill to demonstrate that he will be successful on appeal, only that the issues he plans to raise are novel, not yet settled by precedent, or simply doubtful. *See Giancola*, 754 F.2d at 900. "The inquiry focuses on whether 'responsible and conscientious counsel pose some problems that on this record are not free from doubt.'" *United States v. Price*, 611 F. Supp. 502, 504 (S.D. Fla. 1985) (quoting *D'Aquino v. United States*, 180 F.2d 271, 272 (9th Cir. 1950).

Mr. Hill's appeal will raise several "substantial questions" of law,[2] one of which is a question of first impression in this Circuit that will be reviewed by the appellate panel *de novo*. Among other potential issues, Mr. Hill will challenge whether the indictment alleges a crime for which he had fair warning; whether there was sufficient evidence from which the jury could conclude that Mr. Hill's use of the restraint chair lacked a legitimate nonpunitive governmental purpose or was disproportionate to that purpose; and whether this Court erred in denying Mr. Hill's repeated motions for mistrial and ultimately giving a second *Allen* charge. Any one of which would result in the reversal of his conviction on appeal, and the first issue would prohibit retrial altogether if granted.

---

[2] Mr. Hill may raise other issues on appeal but limits this Motion to the three issues presented here.

4

### A. <u>Motion to Dismiss</u>

Mr. Hill moved to dismiss the indictment on the ground that, because no person in this judicial circuit had ever been criminally prosecuted or even held civilly liable for the acts alleged, he did not have fair warning that the use of the restraint chair in the alleged manner was criminal, barring this prosecution as a matter of law. (*See* Dkts. 20, 33, 57.) After a hearing, the Magistrate Judge recommended that this Court deny Mr. Hill's motion, which this Court ultimately did. (Dkts. 43, 45, 58.)

This Court adopted the Magistrate Judge's reasoning that Mr. Hill had fair notice that his use of the restraint chair in the alleged manner was criminal based on a "broad statement of principle within the Constitution, statute, or case law that establishes the right to be free from the use of unreasonable force by law enforcement officers." (Dkt. 58 at 4 (internal quotation marks and citation omitted).) The Court reasoned that law enforcement officers cannot restrain a pretrial detainee who is not resisting unless there is a legitimate nonpunitive governmental purpose. (*Id.* at 5.) The Court distinguished the conduct charged in the indictment "from situations where restraints are used for order and safety, such as when detainees (despite remaining compliant) are handcuffed while being moved throughout a jail or while being interviewed by counsel in a courthouse visitation room." (*Id.* at 6.) While the Court acknowledged that restraints can be

5

used to preserve internal order, discipline, and institutional security, those examples are "patently distinguishable from the facts at bar." (*Id.* (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 953-54 (11th Cir. 2019).)

But Mr. Hill will argue on appeal that his reason for using the chair was not "patently distinguishable" from other acceptable bases for restraint such that he had fair warning that his use of the restraint chair was excessive in relation to that purpose (and that, as explained in the next section, the government did not put up sufficient evidence to refute). The indictment simply alleges that the detainees were not resisting and suggests that Mr. Hill had a punitive intent. (*E.g.,* Dkt. 49 ¶¶ 11, 12, 43.) But Mr. Hill argued that the government must do more than allege a punitive intent; it must allege (and ultimately prove) that the restraint was "objectively unreasonable." (*E.g.,* Dkt. 39 at 7); *see Piazza*, 923 F.3d at 952-53. The Court acknowledged in its order that force on an unresisting detainee could be warranted. (Dkt. 58 at 6.)

The problem is that the relevant law does not clearly establish when restraint of an unresisting detainee could be justified and when it is not—and as explained in the next argument, this was a substantial gap in the government's proof at trial. It is tautological simply to repeat the language from *Piazza* that the continued use of force against a detainee who is complying is objectively unreasonable, since the Court suggested (and common sense dictates) that

6

restraint can continue to be used on an unresisting detainee if there is some other legitimate purpose. (Dkt. 58 at 6.) The "force" at issue in *Piazza* was the repeated use of a taser on a detainee who was lying supine on the ground, not the passive restraint used here and which the Court acknowledge could be justified even on compliant detainees. And that is the precise problem—there is no caselaw to guide law enforcement officers on when passive restraint on a compliant detainee is constitutionally prohibited. That is the question of first impression the Eleventh Circuit will be resolving in this appeal.

Mr. Hill also intends to challenge whether *Piazza* itself created a misleading legal standard. Because *Piazza* involved the use of tasers and not passive restraint, its holding that force can never be used on a compliant detainee leads to an absurd result as applied in this case—that law enforcement must remove all restraints the instant a detainee becomes compliant. This means that, at every arraignment/bond/suppression/plea/sentencing hearing in this building, the U.S. Marshal Service criminally violates the Constitution each time they have concluded transport and seat a defendant at counsel table—which happens routinely. Detainees also remain in handcuffs and leg chains when they are in attorney visitation rooms in lockup and attorneys are seated in a separate room

with a window between them.³ How could a detainee possibly pose a threat to order and security when he is seated in a room *alone*? It seems obvious that this is not the unconstitutional use of force, but under the government argument, it is not clear why not. There is no law clearly establishing that passive restraint such as this is even the use of force, and, if yes, how a reasonable officer should know when the line is crossed as to unresisting detainees. The Eleventh Circuit should and likely will use this case to bring further clarity to what conduct is and is not criminally punishable in this context. (*See* Dkt. 20 at 8.) But such *ex post facto* clarity would nonetheless require that Mr. Hill's conviction be vacated.

The Eleventh Circuit will review whether the indictment sufficiently alleges a crime *de novo*. *See United States v. Seher*, 562 F.3d 1344, 1356 (11th Cir. 2009). Because this was a novel theory of prosecution—as this Court acknowledged at sentencing—and there are no cases even remotely similar to act as a beacon, it is very possible that the reviewing panel would see the issue differently. This could result in Mr. Hill having completely served a sentence for a crime for which the Eleventh Circuit determines he never should have been prosecuted.

---

³ One can only imagine the flurry of *Bivens* actions that will ensue if this view stands.

## B. <u>Insufficient Evidence Regarding Reasonableness of Force</u>

The defense predicted at the pretrial conference that "this trial is going to come down to legitimate nonpunitive governmental purpose. That is at the heart of our theory is, what is his philosophy for law enforcement and for running his jail." (Pretrial Conf. Tr. at 36-37.) And that is exactly what happened at trial.

The government's theory of the case was that because the seven detainees named in the indictment were not resisting at the time they were placed in the chair, it constituted unreasonable force. (*See* Trial Tr. at 321 (Gvt. Opening Statement: "Although none of them were acting violent or uncontrollable and none of them posed a threat to anyone, Sheriff Hill ordered each of them to be strapped into a restraint chair . . . .").) In advance of the charge conference and not yet knowing what law the Court would give the jury, the government instructed the jury on its own. In its opening statement, the government told the jury that the law forbids the use of force for deterrence or "to scare a detainee or the rest of the jail population into behaving or to teach them a lesson."[4] (*Id.* at 323.) The government further admitted that force can be justified and listed several grounds for the use of force, such as establishing control over a violent detainee. (*Id.* at 323-

---

[4] The defense is not aware of any law stating that passive restraint cannot be used prophylactically for deterrence. Detainees are restrained all the time—even in this courtroom—as a preventive measure. It is unclear where the government came up with notion that the law forbids this.

9

24.) Most significantly, the government told the jury that "jailers cannot continue using force when a detainee is complying with the jailer's commands." (*Id.* at 324.) This statement comes from *Piazza* and was included in the government's requests to charge, but the Court explicitly struck that language from its final charge. (*Id.* at 2087.) And as argued at the charge conference, it is far from clear whether that rule would hold true in case of passive restraint like this. (*Id.* at 2065.)

Having framed for the jury what the government believes the law governing this case is, the government's evidence was consistent with that theory: because the seven detainees were not resisting, there was no legitimate nonpunitive purpose for placing them in a restraint chair. Witness after witness testified to the fact that even the detainees who had displayed belligerence or noncompliance were compliant at the point Mr. Hill ordered them into the chair.

Surprisingly, the government did not put up any evidence about what a reasonable officer in Mr. Hill's position would understand about excessive force. The defense pointed to this problem at the pretrial conference: "Somebody's going to have to testify and tell the jury about what constitutes excessive force. And so I don't know how they are going to do that without having someone who has training in law enforcement, who understands, you know, what excessive force is. . . . And so I don't know how they are going to prove that without an expert." (Pretrial Conf. Tr. at 38-39.) While the government asked many of its law

enforcement witnesses who were on the scene when the detainees were placed in in the chair whether they saw any reason to restrain the detainees, none of them were armed with the totality of circumstances known by Mr. Hill. And without any witness to assess that totality and tell the jury whether a reasonable officer would deem that force excessive, the government did not establish that Mr. Hill's choices were unconstitutional.

The defense raised this issue again in its Rule 29 motion for judgment of acquittal. There was no evidence—much less proof beyond a reasonable doubt—regarding when a pretrial detainee can be restrained if he is not resisting, and therefore the jury "cannot rule out that the restraint chair, as used by Sheriff Hill, was outside the boundaries of that other legitimate, nonpunitive purpose that exists both in the indictment and the law." (Trial Tr. at 1691-92.) The defense conceded that none of the seven detainees were resisting at the time they were placed in the restraint chair, "[b]ut that doesn't mean that there could not be some other explanation, which raises the $20 million question that we brought up at the pretrial conference." (*Id.* at 1693-94.) The defense pointed out several examples from the evidence at trial where people were restrained in handcuffs and leg restraints—sometimes for hours—when they were perfectly compliant. (*Id.* at 1691-93.) By the government's logic, that would be impermissible punishment because they were nonviolent and subdued. The government conceded that there

11

are times when restraint can be used on a detainee who is not resisting but never proved where that line is, so a reasonable jury could not eliminate Mr. Hill's reasons from the scope of permissible restraint. (*Id.* at 1694.)

In response to Mr. Hill's Rule 29 argument, the government shifted the burden to the defense by arguing that there was "no evidence at all that shows they should be in there for any legitimate, nonpunitive reason." (*Id.* at 1707-08, 1718-19.) Rather than substantively responding to the defense's argument that it did not prove when the line of excessive restraint is crossed, the government deflected with an *ad hominem*: "[T]o stand in this courtroom and suggest that the government has conflated and can't tell the difference between handcuffing someone and strapping them in a restraint chair for four hours is crazy." (*Id.* at 1708.) But it could not point to a shred of evidence from which the jury could determine that a reasonable officer, armed with the totality of information Mr. Hill had, would have known that the use of the restraint chair was excessive force.

Perhaps the government planned to rely on its proposed jury instruction that "once a prisoner has stopped resisting there is no need for force, so the use of force thereafter is disproportionate to the need" and therefore impermissible. (*See* Dkt. 78 at 14.) But the Court rightly chose not to give that instruction. (Trial Tr. at 2087.) Without any evidence to help the jury make the factual determination of

whether the force here was excessive—because lack of resistance alone does not carry the day—the government failed to meet its burden.

Although the Court denied Mr. Hill's motion (*id.* at 1724), the Eleventh Circuit could find sufficient gaps in the government's proof to warrant reversal of Mr. Hill's conviction.

### C. <u>Denial of Motion for Mistrial and Second *Allen* Charge</u>

Finally, Mr. Hill will challenge this Court's denial of his motion for a mistrial after the jury was deadlocked and its decision to give the jury a second *Allen* charge, which will be reviewed for abuse of discretion. *See United States v. Fossler*, 597 F.2d 478, 483 (5th Cir. 1979); *see also United States v. Heller*, 785 F.2d 1524, 1527-28 (11th Cir. 1986).

To recap, the jury was charged and began deliberations around noon on Friday, October 21, 2022. (Trial Tr. at 2187.)  Mid-afternoon on Monday, October 24, 2022, the foreperson sent a note that the jury had reached a unanimous verdict on two counts but was deadlocked on the remaining five counts. (*Id.* at 2210.) Over Mr. Hill's objection, the Court gave the Eleventh Circuit's modified *Allen* charge. (*Id.* at 2213-16.)  Less than an hour later, the foreperson returned another note complaining about a particular juror, whom the parties and the Court deduced was a holdout. (*Id.* at 2217.) The Court instructed the jury to continue deliberating, and Mr. Hill moved for a mistrial on the remaining five counts. (*Id.* at 2220, 2222.)

He renewed his motion for mistrial the next morning after learning that a different juror was ill and that an alternate would be substituted. (*Id.* at 2240.)

Before lunch on Tuesday, October 25, 2022, the foreperson returned another note questioning the holdout juror's cognitive ability. (*Id.* at 2251-52.) The Court asked the foreperson to identify the holdout juror and then brought him out to be questioned on the record. (*Id.* at 2264-68.) The holdout juror articulated his basis for disagreeing with the majority, and he described with visible emotion how his fellow jurors were treating him—including screaming at and disparaging him. (*Id.*) This rebutted the foreperson's allegation that he was cognitively impaired, so the Court instructed the jury to continue deliberating. (*Id.* at 2273.) Mr. Hill again moved for a mistrial. (*Id.* at 2270.) The foreperson sent another note complaining about the holdout juror and whose testimony he credited. (*Id.* at 2275-76.) Mr. Hill again moved for mistrial, but the Court released the jury to continue deliberations the next morning. (*Id.* at 2276.) Mr. Hill filed a motion for mistrial on the record that night. (Dkt. 91.)

On Wednesday, October 26, 2022—four days into jury deliberations—the Court heard argument on Mr. Hill's motion but denied it. (Trial Tr. at 2299-2302.) After four more hours of deliberation, the Court gave a second *Allen* instruction over Mr. Hill's objection. (*Id.* at 2303-05.) After less than an hour of deliberation, the foreperson returned another note complaining of the holdout juror, who was

14

again brought out for questioning over defense objection. (*Id.* at 2308-2319.) Mr. Hill moved for mistrial again, which was denied. (*Id.* at 2321.) After the foreperson stated that she still believed the jury could "get somewhere," the Court allowed the jury to proceed. (*Id.* at 2323.) It returned a guilty verdict one hour and twenty minutes later. (*Id.*)

The disfunction and abnormalities that infected jury deliberations in this case were palpable. The holdout juror had every right to stand firm in his belief that the government failed to meet its burden without being bullied by his fellow jurors to change his vote. *See United States v. Brown*, 996 F.3d 1171, 1184 (11th Cir. 2021). Our jury system embraces the fact that some juries are hopelessly deadlocked and that forcing further deliberation would be futile. *See Brewster v. Hetzel*, 913 F.3d 1042, 1047 (11th Cir. 2019).

Mr. Hill will ask the Eleventh Circuit to compare this case to *Brewster*, where it reversed the defendant's conviction after finding that the *Allen* charge was unduly coercive. In that case, the jury informed the court repeatedly that it was deadlocked but was nonetheless given an *Allen* charge. The Eleventh Circuit not only reversed the conviction, it found that defense counsel was ineffective in not seeking a mistrial in the face of such coercive pressure. The reviewing panel here may very well conclude that the Court should have declared a mistrial and that the second *Allen* charge was coercive. *See Fossler*, 597 at 483-85 (reversing

conviction and remanding for new trial where "[t]he jury indicated at three separate points in time, over a three day period, that it could not reach a decision" and where the jury returned a verdict shortly after the second Allen charge was read); *see also Illinois v. Somerville*, 410 U.S. 458, 509-510 (1973) ("[I]f [the judge] fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors."). Should the Eleventh Circuit agree with Mr. Hill, reversal is required.

## **CONCLUSION**

Should the Eleventh Circuit resolve any of the issues above in Mr. Hill's favor, his conviction will be reversed. And should he win on the fair notice question, there will be no new trial. If Mr. Hill is denied bond while his appeal is pending, he will almost certainly serve his entire sentence before the appeal is even resolved—which would work a manifest miscarriage of justice if the appeal comes out his way. For these reasons, Mr. Hill respectfully asks this Court to allow him to remain on bond while he litigates his appeal.

Respectfully submitted this 12th day of April, 2023.

By: /s/ **_Lynsey M. Barron_**
Lynsey M. Barron


Drew Findling
    Ga. Bar No. 260426
Marissa Goldberg
    Ga. Bar No. 672798
The Findling Firm
3490 Piedmont Road NE, Suite 600
Atlanta, GA 30305
Telephone (404) 460-4500
Email: drew@findlinglawfirm.com
      marissa@findlinglawfirm.com

Lynsey M. Barron
    Ga. Bar No. 661005
Barron Law LLC
3104 Briarcliff Road
P.O. Box 29964
Atlanta, Georgia 30359
Telephone (404) 276-3261
Email:  lynsey@barron.law

***Attorneys for Sheriff Victor Hill***

## CERTIFICATE OF SERVICE

    I hereby certify that on the below date I electronically filed the foregoing Motion for Bond Pending Appeal with the Clerk of Court using CM/ECF system which will automatically send email notification of such filing to the to the following attorneys of record, including:

> Brent Gray, AUSA
> Brett Hobson, AUSA
> U.S. Attorney's Office
> 600 Courthouse
> 75 Ted Turner Drive SW
> Atlanta, GA 30303

This 12th day of April, 2023.

                                                 */s/ Lynsey M. Barron*
                                                By: Lynsey M. Barron
                                                   Ga. Bar No. 661005

                                             *Attorney for Sheriff Victor Hill*